**Kathleen ZICHY and Jane E. Schofer**

**v.**

**The CITY OF PHILADELPHIA.**

**Civ. A. No. 72-1810.**

United States District Court,
E. D. Pennsylvania.

March 19, 1975.

Barbara R. Muehleib, Philadelphia, Pa., for plaintiffs.

John M. McNally, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

We have before us cross motions for summary judgment in the instant case. For the reasons set forth below, we grant plaintiffs' motion for judgment to the extent of a declaration that the denial by defendant of the use of sick leave for maternity-related disabilities is illegal, and to the extent of an injunction against continued enforcement of the policy. By the same token, we deny defendant's motion to the extent it seeks judgment contrary to that which we have determined plaintiffs merit.

Plaintiffs originally brought this action challenging the above described policy of the City of Philadelphia as unconstitutional under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

Plaintiff Zichy subsequently filed a charge against the defendant city under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., with the Equal Employment Opportunity Commission within the time limit prescribed by the statute. After Ms. Zichy received from the Commission a "Notice of Right to Sue" on February 22, 1974, plaintiffs amended the complaint in the action before this Court to add Title VII as an additional ground for relief.

*In toto*, plaintiffs request: declaratory and injunctive relief against the defendant's policy on the use of sick leave for maternity-related disabilities, damages for back pay, loss of benefits and promotions, humiliation and harassment plaintiffs have suffered, and any other relief this Court may determine.

Jurisdiction of this action is under 28 U.S.C. § 1343(1)–(4), 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000e–5(f). We have previously certified the class of plaintiffs for this action under F.R.Civ. P. 23(b)(2) to consist of:

". . . all female persons currently and formerly employed by the City of Philadelphia from September 14, 1966, who, during the course of their employment, have been, are being, or will be caused to take non-paying maternity leave rather than being permitted to use accumulated sick leave for temporary disabilities caused or contributed to by pregnancy, childbirth, and the recovery therefrom, and those female employees who were caused to resign and accept positions with loss of seniority and benefits upon returning to work after recovering from said disability."

As of 1973, defendant employed 32,000 persons, of whom a large percentage are women.

Plaintiffs also raised in their complaint a question as to the denial of unpaid maternity leaves of absence from 1966 until September, 1973. Plaintiffs contend these denials were made on a sex discriminatory basis, but defendant denies this charge and the facts which plaintiffs allege in support of it. Since such dispute exists on the facts of this claim, plaintiffs do not seek summary judgment on it in the motion now before us, but instead request summary judgment only on the claim dealing with the sick leave and maternity disability question.

In addition, plaintiffs seek in the current motion only a grant of summary judgment as to liability, with a reservation for later decision of the issue of relief. This is, plaintiffs at this time request only a declaration of the illegality of defendant's policy concerning sick leave and an injunction against continued enforcement of the policy. As we said at the outset of this opinion, because we believe bifurcation of liability and relief is the proper manner of deciding this case, we limit our decision today in accordance with plaintiffs' request.

*The Facts*

Neither party disputes the facts relating to defendant's policy in the use of sick leave for maternity related disabilities.

The City of Philadelphia is a municipal corporation organized under the laws of the Commonwealth of Pennsylvania, employs more than fifteen (15) persons, and has had since January 1, 1954, a sick leave plan for its employees. Under that plan, all permanent, Civil Service employees who work full time or part time in excess of twenty (20) hours a week earn sick leave as a form of compensation merely by coming to work every day. Such leave is earned at the rate of one and two-thirds (1⅔) days per month, with a maximum permissible accumulation of 200 days.

When taking sick leave, a city employee continues to earn his or her normal salary and to accrue seniority, does not lose the privilege of taking promotional examinations for the time out, has the time out credited for service and will receive the same raises as other employees in his or her classification who

were not on sick leave. In addition, the employee continues to accumulate sick leave while on leave, will suffer no adverse effect on promotions, will resume the same position held prior to the commencement of such sick leave upon return, and will have no change in anniversary date of employment, pension plan, vacation time, and other fringe benefits as a result of using the sick leave.

Section 21 of the Civil Service Regulations controls the granting and use of sick leave. Section 21.011 reads:

"21.011. Authorized Sick Leave—includes, with the approval of the appointing authority, the absence from duty with pay of an employee because of his illness or non-service-connected injury, his appointments with doctors or other recognized practitioners in the treatment of such illness or injury to the extent of time required to complete such appointments, or his exposure to contagious disease."

As a matter of practice, sick leave is granted for such diverse reasons as an alcoholic "hangover", elective surgery, lung cancer or emphysema, or broken legs from skiing. While such conditions can occur as readily in both men and women, sick leave is also granted for conditions which are unique to either sex. A man, for example, may use sick leave for a prostatectomy. Similarly, a woman may use sick leave for an abortion or miscarriage.

Women are not, however, entitled under present practice to use sick leave for absence resulting from pregnancy or birth-related delivery, at least to the extent such pregnancy and delivery occur in "normal" fashion, that is, without complications. The city instead governs absence because of maternity and child birth under Civil Service Regulation 22.12, which reads:

"22.12 MATERNITY LEAVE. In accordance with Section 22.02 of these Regulations, a permanent employee shall be granted a maternity leave without pay. The employee shall re-tain her same position, if such leave does not exceed six (6) months duration."

In accordance with this policy, the city has not granted paid sick leave to those employees who take a leave of absence because of pregnancy and have a child delivered without any complications during the pregnancy or the birth.

We have noted to this point a distinction in the city's policy towards "normal" pregnancy and birth as opposed to pregnancy and birth with "complications". Such distinction merits some elaboration. While the regulations under which the city governs sick leave and maternity leave contain no express distinction between normal and complicated pregnancies and birth, the city contends, with supporting affidavit which plaintiffs do not challenge, that it does make such a distinction in practice. The city asserts that while it does not grant sick leave for normal pregnancy and birth, it does allow female employees to use accumulated sick leave for any complications that develop during the pregnancy. It is not necessary that such complication develop prior to the employee's beginning her leave of absence for maternity reasons. If complications develop during a maternity leave of absence, the employee may apply to have such period of time charged against sick leave until the employee recovers from the complications or exhausts her accumulated sick leave, whichever occurs first.

As set forth in the above discussion, however, those women with normal, uncomplicated pregnancies and deliveries may not use sick leave to cover their maternity-related absence from work. These women must instead take the unpaid maternity leaves described above.

For such women, the consequences of having to take maternity leave rather than using sick leave are significant. Besides receiving no pay for the period of absence, the employee on maternity leave loses the benefits, mentioned above, which she enjoys in the use of

sick leave. During maternity leave, the employee accumulates neither seniority, sick leave, nor vacation time, her time required for annual increment and anniversary date is deferred for the period of the maternity leave, and the annual rate of pay for her pension purposes is lowered for that particular year by the period of leave.

Plaintiff Kathleen Zichy has been an employee of the City of Philadelphia since February 20, 1967 as a management trainee in the Examination Division of the Personnel Department of the city. On approximately April 26, 1972, she requested of defendant permission to use sick leave accrued during her employment for purposes of recovery from childbirth and for any period of disability occurring during her pregnancy. By letter of May 5, 1972, Foster Roser, personnel director of the city, denied her request. As of September 1, 1972, Ms. Zichy had earned approximately sixty-four and seven sixteenths (64⁷/₁₆) sick leave days. She subsequently became disabled from pregnancy and left work on November 16, 1972.

Plaintiff Jane Schofer, who became an employee of the city on July 28, 1969, began unpaid maternity leave on February 14, 1972. On August 29, 1972, her husband wrote to Mr. Herman Greenberg, personnel director of the Free Library, where Ms. Schofer worked, requesting that sick leave benefits accumulated during his wife's, Jane Schofer's, employment be paid to his wife for the time she was absent from work in preparing for and recovering from childbirth. By letter of September 5, 1972, Mr. Greenberg advised Mr. Schofer that the Civil Service Regulations did not permit the use of sick leave for maternity purposes. As of February 14, 1972, when she began her maternity leave, Ms. Schofer was entitled to thirty-three (33) days of sick leave.

As the above recitation of facts indicates, the pregnancy leave of Plaintiff Zichy occurred after March 24, 1972, the date on which municipal corporations were included under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The maternity leave of Plaintiff Schofer occurred prior to March 24, 1972.

*Plaintiffs' Title VII Claim.*

■ The question before us is whether the city's policy of denying to its female employees the use of sick leave for maternity-related disabilities constitutes discrimination by sex in violation of Title VII. We conclude that it does.

While we find the authority cited by plaintiffs persuasive we rest our conclusion squarely upon the recent decision by our Court of Appeals in Wetzel v. Liberty Mutual Insurance Company, 511 F.2d 199 (3rd Cir., 1975). In *Wetzel*, decided after submission of briefs in our case, the Court of Appeals affirmed a district court's decision by summary judgment that Liberty Mutual violated Title VII by not including disability from pregnancy among the disabilities covered by the company's employee income protection plan. Under the company's plan, which was a fringe benefit funded partially by employee contributions, an employee out of work because of an illness requiring the care of a doctor received a percentage of his salary for the duration of his leave. The plan did not, however, cover any leaves or temporary absences for disabilities due to or related to pregnancy, and the company consequently paid no benefits under the plan for such pregnancy-related disabilities.

In holding that this policy constituted discrimination by sex in violation of Title VII, the *Wetzel* Court held, first of all, that contrary to defendant's assertion, the Supreme Court's decision in Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), did not compel the Court of Appeals to hold in defendant's favor on the Title VII question. As in this case, the defendant in *Wetzel*, in arguing that its income protection policy did not constitute sex discrimination in violation of Title VII, had relied virtually entirely upon *Geduldig*.

As the *Wetzel* Court accurately pointed out, however, the *Geduldig* decision, while dealing with alleged sex discrimination, involved the issue only of whether such discrimination violated the Equal Protection Clause of the Fourteenth Amendment, and did not involve, discuss, or resolve the issue of whether such discrimination violated Title VII. For this reason alone, the *Wetzel* Court said, reliance on *Geduldig* to resolve a Title VII issue was misplaced. *Wetzel*, 511 F.2d at p. 203.

*Wetzel* further distinguished *Geduldig*, involving a California state disability insurance program which did not cover disabilities relating to normal pregnancy, from the facts of its case. For one thing, *Wetzel* noted, the sources of funding the disability programs respectively in its case and *Geduldig* were different, and for another, the Liberty Mutual plan excluded disabilities resulting from all pregnancies while the program in *Geduldig* excluded only disabilities from "normal" pregnancies. *Wetzel*, 511 F.2d at p. 203.

In the instant case, the facts of the city's sick leave program are not precisely the same as the *Wetzel* facts, and consequently perhaps not as distinguishable from the facts of *Geduldig*. In the instant case, for example, the funds for sick leave benefits come presumably from the same source as all employee salaries, namely, general tax revenues. In addition, as noted in our statement of facts and similar to *Geduldig's* facts, the city's sick leave policy in this case in practice excludes only disabilities and absence from work resulting from normal pregnancies, while disabilities resulting from pregnancies with complications are covered.

We do not, however, think these factual differences from the case in *Wetzel* dictate a change in our conclusion that, under *Wetzel*, the Court's *Geduldig* decision does not control our decision in this case. As noted above, *Wetzel* held *Geduldig* inapplicable to the Title VII issue the *Wetzel* Court faced because *Geduldig*, argued and decided on Fourteenth Amendment grounds alone, simply did not deal with Title VII.

In light of this holding, the subsequent distinction by *Wetzel* of the facts of its case from those of *Geduldig* was unnecessary to the *Wetzel* Court's decision that *Geduldig* did not dispose of the *Wetzel* Title VII issue. Accordingly, the similarity or distinction of the facts of the employment program in question here from those in question in either *Wetzel* or *Geduldig* will not render *Geduldig* more or less applicable to the Title VII issue in the instant case. If, under *Wetzel*, Geduldig did not dispose of the *Wetzel* Title VII issue because *Geduldig* did not deal with Title VII, then *Geduldig* does not control the disposition of a Title VII issue in any case, whatever the facts of the employment program such latter case involves.

After holding Geduldig inapplicable to the Title VII issue then before the Court of Appeals, the *Wetzel* Court then proceeded with a statutory analysis of whether the income protection program in question violated Title VII.

First, the Court said, Title VII was enacted for the broad purpose of eliminating disparate or discriminatory treatment in employment, in the sense of artificial or arbitrary impediments, based on race, color, religion, sex, or national origin. Wetzel, 511 F.2d at p. 204.

Second, the Court said, while the prohibition against discrimination on the basis of sex may originally have been offered in a less-than-serious manner, the failure of Congress to amend Title VII in subsequent years indicated that Congress intended the Act's broad purpose to prohibit discrimination to be applied as readily to discrimination on the basis of sex as to discrimination on the other expressly prohibited bases. *Wetzel*, 511 F.2d at p. 204.

Third, the Court said, to effectuate the goals of Title VII, Congress created the EEOC, and gave it the power to issue regulations or guidelines that would indicate the discriminatory practices the

Act proscribed. These guidelines, said the Court, are the agency's interpretation of the statute, and consequently are to be given great deference except where application of the guideline would be inconsistent with an obvious congressional intent not to reach the employment practice in question.

The *Wetzel* Court then noted that certain of these guidelines issued by the EEOC prohibited an employer from discriminating, because of pregnancy, with respect to employment policies and fringe benefits. The guidelines to which the Court referred provided:

"§1604.9 Fringe benefits

"(a) 'Fringe benefits', as used herein, includes medical, hospital, accident, life insurance and retirement benefits; profit sharing and bonus plans; leave; and other terms, conditions, and privileges of employment.

"(b) It shall be an unlawful employment practice for an employer to discriminate between men and women with regard to fringe benefits.

\*　\*　\*　\*　\*　\*

"1604.10 Employment policies relating to pregnancy and childbirth.

\*　\*　\*　\*　\*　\*

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, and availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities."

■ The Court found without merit the defendant's argument that the Court should not defer to these guidelines because they were inconsistent with the EEOC's earlier position and were inconsistent with the policy and understanding of Title VII. In the Court's view, the EEOC was entitled to adjust its guidelines to the changing concepts of our society, and that Congress recognized that this would be the case. Viewing the above-outlined guidelines as consistent with Title VII's plain meaning, the Court held these guidelines entitled to deference. *Wetzel*, 511 F.2d at pp. 205–206.

The Court then said that under these guidelines, and specifically under 29 C.F.R. § 1604.10(b), "it is discriminatory to treat pregnancy differently from other temporary disabilities." *Wetzel*, 511 F.2d at p. 205. Applying this principle to the facts of the case before it, the Court concluded that Liberty Mutual's income protection plan, which expressly excluded all pregnancy disabilities while at the same time covering all other disabilities except those voluntarily inflicted, discriminated against women in violation of the EEOC guidelines and Title VII. *Wetzel*, 511 F.2d at p. 206.

In reaching this conclusion, the Court expressly rejected the argument that Liberty Mutual could justifiably exclude pregnancy disabilities because pregnancy is voluntary, while illnesses are not. As the Court said:

"Voluntariness is no basis to justify disparate treatment of pregnancy. There are a great many activities that people participate in that involve a recognized risk. Most people undertake these activities with full knowledge of the potential harm. Drinking intoxicating beverages, smoking, skiing, handball and tennis are all types of activities in which one could sustain harm.

According to Liberty Mutual's policy, all disabilities that could result from the above activities are covered under the income protection plan. Even if

we were to accept appellant's argument of voluntariness, we find that some voluntary disabilities are covered while voluntary disability that is peculiar to women is not so covered. Either way we find no support for appellant's argument. Moreover, pregnancy itself may not be voluntary. Religious convictions and methods of contraception may play a part in determining the voluntary nature of a pregnancy. There is no 100% sure method of contraception, short of surgery, and for health reasons many women cannot use the pill. This court will not accept "voluntariness" as a reasonable basis for excluding pregnancy from appellant's income protection plan." *Wetzel,* 511 F.2d at p. 206.

The Court similarly rejected Liberty Mutual's argument that it could exclude pregnancy disability from its plan because pregnancy is not a sickness. As the Court said:

"We believe that pregnancy should be treated as any other temporary disability. Employers offer disability insurance plans to their employees to alleviate the economic burdens caused by the loss of income and the incurrence of medical expenses that arise from the inability to work. A woman, disabled by pregnancy, has much in common with a person disabled by a temporary illness. They both suffer a loss of income because of absence from work; they both incur medical expenses; and the pregnant woman will probably have hospitalization expenses while the other person may have none, choosing to convalesce at home.

Thus, pregnancy is no different than any other temporary disability under an income protection plan offered to help employees through the financially difficult times caused by illness.

Under Liberty Mutual's plan nearly all disabilities are covered. We believe that an income protection plan that covers so many temporary disabilities but excludes pregnancy because it is not a sickness discriminates against women and cannot stand." *Wetzel,* 511 F.2d at p. 206.

The Court also rejected Liberty Mutual's argument that its plan did not violate Title VII because of the company's legitimate interest in maintaining the financial integrity of the plan. As the Court said, Liberty Mutual had offered no statistical evidence that the increased cost for pregnancy benefits would be "devastating", and that under EEOC guidelines, " . . . cost is no defense under Title VII to this particular issue. 29 C.F.R. § 1604.9(e)."

Finally, the Court rejected Liberty's argument that the plan's exclusion of pregnancy disabilities could stand because such exclusion policy was neutral on its face. Even if neutral on its face, the Court said, such policy treats a protected class of persons in a disparate manner, and "(t)his is precisely what Title VII intends to strike down." *Wetzel,* 511 F.2d at p. 206, citing Griggs v. Duke Power Co., 401 U.S. 424, 91 S. Ct. 849, 28 L.Ed.2d 158 (1971).

We have dealt with *Wetzel* at such length because we believe its holding and rationale fall squarely on point with the case now before us. Defendant in this case rests its argument that its sick leave policy does not violate Title VII almost entirely in *Geduldig.* As set forth above, *Wetzel* expressly held that *Geduldig* does not govern disposition of a sex discrimination issue under Title VII, and such holding in *Wetzel* disposes of defendant's *Geduldig* argument here.

 To the *Wetzel* Court's well reasoned treatment of *Geduldig's* non-applicability to Title VII cases, we would add only that apart from the fact that *Geduldig* was not a Title VII case, its statement that exclusion of pregnancy disabilities does not constitute sex discrimination which violates the Fourteenth Amendment cannot be taken also to hold that such exclusion also does not violate Title VII, simply because the standards for establishing discrimina-

tion by sex are respectively different under the Fourteenth Amendment and Title VII. The principal difference between the two standards is that under the Fourteenth Amendment, sex discrimination becomes illegal only if intended, while under Title VII proof of intent is unnecessary and discriminatory impact alone establishes liability. The *Geduldig* majority, in fact, relied expressly on the absence of discriminatory intent in holding that the exclusion of pregnancy disabilities from the California income protection plan did not establish sex discrimination in violation of the Fourteenth Amendment of *Geduldig*, 417 U.S. at 496, 94 S.Ct. at 2492, 41 L.Ed.2d at 264, nt. 20.

*Wetzel* similarly disposes of defendant's argument that § 1604.10(b) of the EEOC guidelines, quoted above, does not establish that exclusion of disabilities resulting from normal pregnancy, as opposed to disabilities resulting from complicated pregnancy, is discriminatory. The income protection plan at issue in *Wetzel* excluded disabilities from all pregnancies, normal or complicated, and the Court, in holding that § 1604.10(b) made it a violation of Title VII to treat pregnancy disabilities differently than other disabilities, at no point distinguished between normal and complicated pregnancies.

■ Nor do we think that § 1604.10(b) suggests or permits such a distinction. § 1604.10(b) speaks of "Disabilities caused or contributed to by pregnancy . . . childbirth, and recovery therefrom . . ." and says *nothing about a distinction between normal and complicated pregnancy and childbirth.* We think the only issue under § 1604.10(b) is whether the disability is caused by the pregnancy or childbirth. This regulation shows no evidence that the EEOC intended that courts in applying it should attempt the further and potentially unadministerable task of determining whether the pregnancy or childbirth causing the work disability was normal rather than complicated.

Furthermore, in so interpreting § 1604.10(b), we do not, contrary to defendant's argument, equate "pregnancy" with "disability". Pregnancy need not at all stages disable a woman from work, and only when pregnancy or childbirth does so disable her does § 16.04.10(b) become applicable to the employer's treatment of her. Plaintiffs here themselves emphasize that they seek relief only for the denial of sick leave for the time that pregnancy or childbirth disables the woman from working, and not for the time that the woman, while pregnant, could nonetheless work but elects not to in order, for example, to prepare for childbirth.

■ Similarly, we believe *Wetzel* adequately disposes of defendant's suggestion here that its sick leave policy does not discriminate because such policy allows sick leave only for illness or injury, rather than general disability, and normal pregnancy does not constitute illness or injury. Whether or not pregnancy or childbirth constitute "illness", the *Wetzel* Court expressly said that considering the effects and purposes of an employer's income protection plan, work disability because of pregnancy or childbirth deserves the same treatment as other temporary disabilities. While *Wetzel* dealt with an income protection plan, we believe the same reasoning applies readily to a sick leave plan. Such plans are instituted to alleviate the hardship which would otherwise befall an employee temporarily physically disabled from working. The employee disabled from pregnancy or childbirth has just as much need for such protection as the employee disabled because of strictly defined illness or injury. Denial of sick leave to the employee disabled because of pregnancy or childbirth thus constitutes different treatment of that employee's needs than those of the employee otherwise disabled, but without rational basis for such distinction.

Indeed, we would note that an employee stands to lose far more by not having use of a sick leave plan like that involved here than from an income pro-

tection plan like that involved in *Wetzel*. Whereas the income protection plan preserves only a portion of the employee's pay, the absent employee under the city's sick leave plan here continues not only to receive his full salary, but also to accrue future sick leave as well as time for pension, vacation, promotional, and anniversary date purposes, and other fringe benefits. If the "illness/non-illness" rationale cannot justify the difference in treatment involved in the income protection plan in *Wetzel*, even less can it justify the substantially greater difference in treatment which the sick leave plan here in issue involves.

Perhaps more basically, however, defendant's "illness" argument fails for the simple reason that defendant does not administer its sick leave program to cover only disability from illness or injury. While defendant's sick leave policy, at least under the language of the governing Civil Service Regulation 21.011, would allow use of sick leave for absence from work because of illness or injury, in practice defendant allows use of sick leave for absence from work for reasons other than illness or injury, such as elective surgery or alcoholic hangovers. In practice, therefore, defendant extends sick leave for physical disability generally, rather than only for physical disability from illness or injury, with the only exception to this policy being disability from normal pregnancy and childbirth. In such light, we find that much more reason to conclude that defendant's different treatment of maternity-related disabilities rests on no justifiable basis.

■ Finally, the fact that the employer here is a city has no bearing on the above discussion. Title VII applies to municipal corporations as readily as to private employers, so long as the municipal corporation employs fifteen or more employees in each working day of twenty or more calendar weeks in the current or preceding calendar year, which criteria defendant meets in this case. See 42 U.S.C. § 2000e(a) and (b), as amended 1972.

Accordingly, we conclude that defendant's policy of denying the use of sick leave for maternity-related disabilities violates Title VII's prohibition against sexual discrimination in employment. For the purposes of our present order, we need not decide the issue of damages or the related issue of whether Title VII compels the defendant to remedy any continuing effects of its denial of sick leave for maternity-related disability in the past and up to the date of this order. We will consider these issues only after the presentation of further evidence and oral argument.

*Plaintiffs' Fourteenth Amendment Claim.*

In light of our decision on Title VII grounds, we need not reach the issue of whether defendant's sick leave policy also violates the Fourteenth Amendment.