SCHOOL COMMITTEE OF BROCKTON *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION.

Plymouth. December 4, 1978. — February 28, 1979.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Anti-Discrimination Law. Labor,* Union. *Massachusetts Commission
Against Discrimination. Administrative Law,* Hearing.

A school committee's policy of denying accrued sick leave benefits to
    teachers disabled by pregnancy constituted unlawful sex discrimi-
    nation in violation of G. L. c. 151B, § 4. [397-399]
The rights conferred by G. L. c. 151B, § 4, may not be waived by a labor
    union in a collective bargaining agreement. [399]
A regulation of the Massachusetts Commission Against Discrimina-
    tion that pregnancy-related disabilities should be treated as tempo-
    rary disabilities under any health or temporary disability insur-
    ance or sick leave plan available in connection with employment
    did not conflict with G. L. c 149, § 105D. [400-401]
Evidence of the cost of granting sick leave benefits to pregnant em-
    ployees was irrelevant in a proceeding before the Massachusetts
    Commission Against Discrimination against an employer denying
    such benefits for pregnancy-related disabilities. [401-402]
In a proceeding before the Massachusetts Commission Against Dis-
    crimination, there was sufficient evidence to warrant the commis-
    sion's finding that the complainant's pregnancy-related disability
    had lasted six weeks. [402]
A school committee was not denied its right to a fair hearing, under
    G. L. c. 30A, § 10, before the Massachusetts Commission Against
    Discrimination by the fact that a witness failed to appear at the
    adjudicatory proceeding after the school committee had properly

requested that he be subpoenaed by the commission where there was no indication that the subpoena had not been issued and the school committee had the burden of enforcing it. [402-403]

CIVIL ACTION commenced in the Superior Court on December 18, 1975.

The case was reported to the Appeals Court by *Williams,* J., a District Court judge sitting under statutory authority. The Supreme Judicial Court granted a request for direct review.

*Katherine A. Hesse* for the plaintiff.

*Jeffrey J. Binder* for the defendant.

HENNESSEY, C.J. The School Committee of Brockton (school committee) denies accrued sick leave benefits to teachers disabled by pregnancy. Aggrieved by this rule, Cynthia Zettlemoyer (complainant) brought the matter to the attention of the defendant, the Massachusetts Commission Against Discrimination (commission), which found the school committee in violation of the antisex discrimination prohibitions of G. L. c. 151B, § 4, and ordered it to cease and desist its disparate treatment of pregnancy and to pay the complainant the amount she would have received if her disability had been other than pregnancy-related. The school committee challenged this determination by filing a petition for review in the Superior Court, and the judge reserved and reported the case to the Appeals Court pursuant to G. L. c. 231, § 111, and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted direct appellate review.

In accordance with this court's recent decision in *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination,* 375 Mass. 160 (1978), we affirm the commission's order. We share the commission's view that the school committee's policy of denying female employees accrued sick leave benefits for pregnancy-related disabilities, like Massachusetts Electric Company's former practice of excluding temporary disabilities related to pregnancy from a comprehensive disability insurance plan, constitutes unlawful sex discrimination in employment under G. L. c. 151B, § 4.[1]

_____

[1] General Laws c. 151B, § 4, as amended through St. 1965, c. 397, §§ 4-6, declares it to be an unlawful practice "[f]or an employer, by

The facts are as follows. As in *Massachusetts Elec.*, the relationship between the employer (the school committee) and the complainant, a member of the Brockton teachers association, is governed in large part by a collective bargaining agreement. Pursuant to Article XVII (A) of the labor contract, teachers are entitled to at least nine sick leave days each year.[2] If not used during the year in which they are earned, sick leave benefits may be accumulated up to a maximum of 165 days. According to par. B of art. XVII, sick leave days may be taken for personal illness or injury or for any other reason approved by the superintendent. Sick leave days, however, may not be utilized for disabilities resulting from pregnancy. Rather, art. XIX, par. C, of the collective bargaining agreement provides female teachers an unpaid

---

himself or his agent, because of the race, color, religious creed, national origin, sex, age, or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification."

[2] Article XVII of the collective bargaining agreement states in relevant part:

"SICK LEAVE

"A. As of September 1972, teachers will be entitled to sick leave days each school year as of the first official day of such school year whether or not they report for duty on that day in accordance with the following schedule:

First year – 9 days
Second year – 12 days
the years thereafter – 15 days

In case of merit, the Committee may allow sick leave beyond the above limit. Sick leave days may be accumulated from year to year up to a maximum of 165 days. . . .

"B. In addition to personal illness or injury, sick leave may be utilized for any other reason approved by the Superintendent."

maternity leave of up to three years.[3] To avail oneself of this provision of the contract, a female teacher is obligated to notify her principal as soon as pregnancy has been definitely ascertained. Further, once having begun a maternity leave, a teacher is prohibited from returning to work any earlier than six weeks after the termination of the pregnancy.

In September, 1972, the complainant, a junior high school music teacher, became pregnant. Expecting delivery to occur near April 15, 1973, she wrote the school committee on January 30, 1973, requesting six weeks' maternity leave with pay, commencing April 23, 1973, and terminating on June 1, 1973.[4] Although her physician, Dr. Jack Marcovitch, certified that the complainant would be physically unable to work for six weeks after delivery, and despite the fact that she had accumulated sufficient sick leave days to cover her anticipated absence,[5] the school committee, while permitting maternity leave, denied the complainant's request to apply accrued sick leave to her period of disability. On the night of April 10, 1973, after teaching during the day, the complainant gave birth to a baby. Maternity leave commenced the following day, April 11, and it extended until May 29,

---

[3] Article XIX, par. C, provides: "Maternity leave of up to three (3) years will be granted without pay or increment. A teacher who becomes pregnant shall notify her principal in writing as soon as pregnancy has been definitely determined. Continued employment will normally be possible until the end of the fifth (5th) month of pregnancy. Appropriate medical evidence of fitness will be required prior to returning from such leave, but a teacher will in no event return earlier than six (6) weeks after the termination of the pregnancy."

[4] The week from Monday, April 16, 1973, through Sunday, April 22, 1973, was a school vacation, during which period teachers were not required to work.

[5] As of April 11, 1973, the complainant had accrued approximately thirty days of sick leave. Between April 11, 1973, and May 22, 1973, there were approximately thirty work days for teachers employed in the Brockton public school system.

1973, when, after consultation with her physician,[6] the complainant resumed her teaching duties.

On February 21, 1974, Zettlemoyer filed a complaint with the defendant commission, contending that the school committee's policy of denying sick leave benefits to pregnancy-related disabilities discriminated against her on the basis of sex. A public hearing was held on November 26, 1974, before a single Commissioner, during which the complainant testified and her physician's letters were introduced, all for the purpose of indicating that her disability had lasted six weeks. Applying the commission's maternity leave regulations,[7] which require an employer to treat pregnancy-related disabilities identically to other temporary disabilities in awarding disability or sick leave compensation, the Commissioner determined that the school committee's refusal to pay the complainant sick leave benefits constituted illegal sex discrimination, and she ordered the school committee to pay the complainant the benefits which she otherwise would have received. The school committee appealed the decision to the full commission, challenging not only the finding of discrimination, but also the single Commissioner's exclusion of evidence relating to the projected cost of providing benefits for pregnancy-related disabilities. In addition, the school committee argued that its sick leave policy was legally shielded from a charge of discrimination both by the collective bargaining agreement and by the statutory maternity leave requirements of G. L. c. 149,§ 105D. Fur-

[6] On May 22, 1973, the complainant was examined by Dr. Marcovitch. In a letter addressed to the school committee, Dr. Marcovitch certified that he examined the complainant on that day and found her physically able to return to work.

[7] The commission's maternity leave regulations provide in pertinent part: "Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment."

ther, the school committee suggested that the Commissioner's ruling was not supported by substantial evidence and that the school committee was denied its right to a fair hearing during the course of the proceeding. With minor modifications, the commission affirmed the single Commissioner's decision.

On appeal before us the school committee again raises these arguments. For the reasons discussed below, we affirm the decision and order of the commission.

We turn first to the school committee's denial of sick leave benefits for pregnancy-related disabilities. Like most courts which have considered the question,[8] this court has left little doubt that deprivation of sick leave benefits because of pregnancy constitutes unlawful sex discrimination. Although we have never been squarely faced with a case involving a denial of pregnancy-related sick leave under G. L. c. 151B, § 4, our prior decisions provide considerable guidance for resolution of this problem. In *Black* v. *School Comm. of Malden*, 365 Mass. 197, 210 (1974), we determined that "categorical disallowance of all sick pay for disabilities related to pregnancy [for public employees] was [constitutionally] improper when sick leave was allowed for ... other disabilities whether voluntary, predictable, normal, or unique." More recently, in *Massachusetts Elec., supra*, we held that pregnancy was a sex-linked characteristic and, therefore, that exclusion of temporary disabilities related to pregnancy from a comprehensive disability insurance plan[9] constituted

---

[8] For economy of space, we do not list the abundance of cases, both State and Federal, which hold that pregnancy-based classifications constitute illegal sex discrimination. An ample annotation may be found in `Massachusetts Elec. Co.` v. *Massachusetts Comm'n Against Discrimination*, 375 Mass., 160, 170-171 (1978). We do note, however, that Congress has recently codified this principle through amendment to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (1976). Pub. L. No. 95-555, 92 Stat. 2076 (1978).

[9] The collective bargaining agreement between the company and the union in *Massachusetts Elec.* provided that temporary disability benefits would be paid to employees for both occupational and nonoc-

unlawful sex discrimination in employment in violation of G. L. c. 151B.

The result in this case is plainly governed by *Massachusetts Elec.*[10] There is no functional or legal distinction between the disability plan challenged in that case and the sick leave policy at issue here. See *Nashville Gas Co.* v. *Satty*, 434 U.S. 136, 143 (1977); *Zichy* v. *Philadelphia*, 392 F. Supp. 338, 342-343 (E.D. Pa. 1975), rev'd and remanded on other grounds, 559 F.2d 1210 (3d Cir. 1977). As in *Massachusetts Elec.*, the school committee compensates employees for limited periods of time, during which an employee must miss work because of a physical disability. See *Castellano* v. *Linden Bd. of Educ.*, 158 N.J. Super. 350, 362 (1978); Comment, Love's Labors Lost: New Conceptions of Maternity Leaves, 7 Harv. C.R.- C.L.L. Rev. 260, 292 (1972). As in *Massachusetts Elec.* the compensation is not extended to pregnancy-related absences. Having previously determined that pregnancy is a gender-linked classification, *Massachusetts Elec., supra* at 167, we are compelled to conclude that the Commissioner was correct in finding the school committee's policy of excluding pregnancy from sick leave coverage sexually discriminatory. By withholding from women what is offered to men—comprehensive protection from the inability to earn income during a period of disability—the school committee quite clearly treats females less favorably than it does males.

The school committee advances three arguments in defense of its pregnancy exclusion policy and one additional

cupational disabilities. Under the terms of the plan, a disabled employee would receive weekly payments which would extend for a period determined by the employee's years of service to the company. The only situations in which benefits were not provided were in cases involving excessive use of alcohol or narcotics, refusal to observe company rules—and pregnancy. *Massachusetts Elec., supra* at 161-162 & n.1 (1978).

[10] No constitutional argument has been advanced by the commission.

argument challenging the commission's procedures. All four we find unpersuasive.

a. *Collective bargaining agreement.* The school committee contends that the inclusion of its maternity policy in the provisions of the collective bargaining agreement, see note 3, *supra,* represents a waiver by the teachers of any right to receive sick pay while absent from school by reason of pregnancy. Failure to find a waiver, the school committee asserts, would unreasonably interfere with the operation of a collective bargaining agreement freely negotiated by the parties.

We disagree. While a union undeniably has the power to waive statutory rights related to collective activity, such as the right to strike, see *Boys Mkts., Inc.* v. *Retail Clerks Union, Local 770,* 398 U.S. 235 (1970), certain other statutory rights stand on a different footing. The rights conferred by G. L. c. 151B, § 4, are in this category. General Laws c. 151B, § 4, concerns not collective processes, but rather each individual's right to equal employment opportunities. See *Alexander* v. *Gardner Denver Co.,* 415 U.S. 36, 51 (1974) (likewise characterizing Title VII of the Civil Rights Act of 1964). Rights of this kind, which are of a personal, and not merely economic, nature are beyond a labor union's ability to bargain away. See *Alexander* v. *Gardner Denver Co., supra; Weber* v. *Kaiser Aluminum & Chem. Corp.,* 563 F.2d 216 (5th Cir. 1977), cert. granted sub nom. *United States* v. *Weber,* 439 U.S. 1045 (1978); *Burwell* v. *Eastern Air Lines, Inc.,* 458 F. Supp 474 (E.D. Va. 1978); *Union Free School Dist. No. 6* v. *New York State Human Rights Appeal Bd.,* 35 N.Y.2d 371 (1974).[11] To hold otherwise would defeat the legislative purpose that each employee be free from discrimination in employment practices.

---

[11] In describing Federal equal employment law, it has been stated: "The rights assured by Title VII are not rights which can be bargained away—either by a union, by an employer, or by both acting in concert." *Robinson* v. *Lorillard Corp.,* 444 F.2d 791, 799 (4th Cir.), cert. dismissed, 404 U.S. 1006 (1971).

b. *G. L. c. 149, § 105D.* The school committee next argues that the commission's maternity leave regulations, see note 7 *supra*, impermissibly conflict with G. L. c. 149, § 105D.[12] The school committee reads § 105D as guaranteeing a female employee an eight-week maternity leave, while allowing the employer complete freedom to decide whether the leave is to be with or without pay. Accordingly, it is contended that the commission's requirement that employers treat pregnancy like other disabilities contravenes the legislative intent that compensation for pregnant employees be wholly at the option of the employer.

As we indicated in *Massachusetts Elec., supra* at 171-172, this interpretation of § 105D is incorrect. Nothing in the statute should be construed as suggesting that an employer, by granting the required maternity leave, is to be immunized against a charge of sex discrimination when pregnancy is omitted from a comprehensive disability or sick leave program. Section 105D simply states that an employer is not required to establish disability benefit programs for females taking maternity leave. Should an employer provide disability or sick leave benefits generally, the strictures of c. 151B, § 4, demand that these be administered free of discrimination on the basis of sex. Since the commission's regulations do no more than rein-

---

[12] General Laws c. 149, § 105D, inserted by St. 1972, c. 790, § 1, required employers to grant maternity leave to certain employees. In pertinent part, the statute provides: "A female employee who has completed the initial probationary period set by the terms of her employment or, if there is no such probationary period, has been employed by the same employer for at least three consecutive months as a full-time employee, who is absent from such employment for a period not exceeding eight weeks for the purpose of giving birth, said period to be hereinafter called maternity leave, and who shall give at least two weeks' notice to her employer of her anticipated date of departure and intention to return, shall be restored to her previous, or a similar, position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave. Said maternity leave may be with or without pay at the discretion of the employer."

force the policy of c. 151B, these directives are not inconsistent with § 105D.

c. *Cost.* It is further maintained that the commission improperly denied the school committee opportunity to introduce evidence pertaining to the cost of granting sick leave benefits to pregnant employees. When offers of proof were made,[13] the single Commissioner ruled such evidence irrelevant. Had it been permitted to make this presentation, the school committee suggests, the anticipated cost would have been shown to justify disparate treatment of pregnancy.

We find no error in the single Commissioner's determination that evidence of cost was irrelevant in a commission proceeding investigating an employer's denial of sick leave for pregnancy-related disabilities. Although it is well established under the Federal equal employment law that some discrimination may be justified in case of "business necessity,"[14] see *Griggs* v. *Duke Power Co.,* 401 U.S. 424, 429-431 (1971), the touchstone of the "business necessity" exception is whether the discriminatory employment practice is vital to safe and efficient job performance. See *Dothard* v. *Rawlinson,* 433 U.S. 321, 331-332 n.14 (1977); *Johnson* v. *Pike Corp. of America,* 332 F. Supp. 490 (C.D. Cal. 1971). The mere fact that an employer may incur additional costs by ending a discriminatory practice is usually insufficient reason to justify its perpetuation in discrimination cases where "business necessity" defenses are otherwise available. *Robinson* v. *Lorillard Corp.,* 444 F.2d 791, 799 n.8 (4th Cir.), cert. dismissed, 404 U.S. 1006 (1971).

---

[13] The school committee attempted to show, through the testimony of Richard Howell, an actuarial consultant specializing in employee benefit plans, that the inclusion of pregnancy in its sick leave program would have cost an additional $170,235 for the year 1974.

[14] The "business necessity" defense is applicable only in employment discrimination cases involving "disparate impact." See *International Bhd. of Teamsters* v. *United States,* 431 U.S. 324, 335-336 n.15 (1977); *Griggs* v. *Duke Power Co.,* 401 U.S. 424, 430-432 (1971).

Where discrimination is manifested by "disparate treatment," as in this case, cost is an even weaker defense. Indeed, courts have repeatedly held this reason an inadequate justification for the exclusion of pregnancy from a disability or sick pay program. See *Hutchison* v. *Lake Oswego School Dist. No. 7*, 519 F.2d 961 (9th Cir. 1975), vacated and remanded, 429 U.S. 1033 (1977); *Sale* v. *Waverly-Shell Rock Bd. of Educ.*, 390 F. Supp. 784 (N.D. Iowa 1975); Larson, Sex Discrimination as to Maternity Benefits, 1975 Duke L.J. 805, 823 (1975). This view is particularly applicable where, as here, the increased cost for pregnancy benefits can hardly be termed "devastating."[15] See *Wetzel* v. *Liberty Mut. Ins. Co.*, 511 F.2d 199 (3d Cir. 1975), vacated and remanded on jurisdictional grounds, 424 U.S. 737 (1976).

d. *Substantial evidence of complainant's disability.* Lastly the school committee urges that the commission's order should be set aside on the grounds that its finding regarding the length of the complainant's disability was not supported by substantial evidence and was unwarranted by the facts on the record. See G. L. c. 30A, § 14 (7) (*e*)-(*f*). Again we disagree. Between the two letters from Dr. Marcovitch and the testimony of the complainant herself, the commission had sufficient evidence from which to find that her pregnancy-related disability had lasted six weeks. Indeed, the school committee presented no evidence to the contrary.

Yet, the school committee contends that it was denied its right to a fair hearing under G. L. c. 30A, § 10, when Dr. Marcovitch failed to appear at the adjudicatory proceeding after the school committee had properly request-

---

[15] See note 13, *supra.* We note, in addition, that some authors have suggested that lower turnover rates and increased morale—two indirect benefits likely to result from providing sick pay for pregnancy—may offset the cost of instituting pregnancy coverage. See Kistler & McDonough, Paid Maternity Leave — Benefits May Justify the Cost, 26 Labor L.J. 782, 792 (1975).

ed that he be subpoenaed by the commission.[16] Significantly, the school committee does not allege that the commission either wilfully or negligently failed to issue the requested subpoena; and, in the present posture of the case, we must assume that the subpoena was actually issued. Viewed in this light, the school committee's inability to cross-examine Zettlemoyer's physician cannot be characterized as a deprivation of procedural rights. Once having issued the subpoena, the commission was under no further obligation to enforce it. Rather, the school committee was itself fully capable of requiring Dr. Marcovitch's attendance by seeking an order in the Superior Court. G. L. c. 30A, § 12 (5).[17] Since the school committee chose not to request a recess in commission proceedings in order to pursue its statutory remedy, it would be inappropriate for us to grant relief at this juncture.

Finding no error in the commission's findings of fact or conclusions of law, nor in its proceedings, we remand the case to the Superior Court for the entry of judgment affirming the commission's decision and order.

*So ordered.*

---

[16] Pursuant to G. L. c. 30A, § 12 (3), inserted by St. 1954, c. 681, § 1, "[a]ny party to an adjudicatory proceeding [is] entitled as of right to the issue of subpoenas in the name of the agency conducting the proceeding. The party may have such subpoenas issued by a notary public or justice of the peace, or he may make written application to the agency, which shall forthwith issue the subpoenas requested."

[17] Section 12 (5) provides in pertinent part: "Upon the failure of any person to comply with a subpoena issued in the name of the agency and not revoked or modified by the agency . . . , any justice of the superior court, upon application by the agency or by the party who requested that the subpoena be issued, may in his discretion issue an order requiring the attendance of such person before the agency and the giving of testimony or production of evidence."