MICHAEL CARR *vs.* TRANSGAS, INC.

No. 92-P-976.

Middlesex. September 8, 1993. - December 6, 1993.

Present: BROWN, FINE, & LAURENCE, JJ.

*Contract*, Collective bargaining contract, Arbitration. *Arbitration*, Collective bargaining, Authority of arbitrator. *Employment*, Discrimination. *Handicapped Persons.*

A former employee was not precluded by reason of a labor arbitration decision from bringing an action under G. L. c. 151B, § 4(16), against his former employer alleging handicap discrimination, where the arbitrator lacked authority under the applicable collective bargaining agreement to determine whether the employee was handicapped within the meaning of G. L. c. 252, § 75B. [583-585]

CIVIL ACTION commenced in the Superior Court Department on April 10, 1991.

The case was heard by *George A. O'Toole, Jr.*, J., on a motion for summary judgment.

*John D. Burke* for the plaintiff.

*Gordon P. Katz* (*Charles A. Cook* with him) for the defendant.

BROWN, J. This is an appeal from a decision by a judge of the Superior Court granting summary judgment to the defendant, Transgas, Inc. (Transgas). On appeal, the plaintiff, Michael Carr, claims that the judge erred in concluding that the decision of an arbitrator precluded his handicap discrimination claim brought pursuant to G. L. c. 151B, § 4(16). As we are in agreement with the plaintiff, we reverse.

Transgas, a Massachusetts liquid gas hauler, employed Carr as a truck driver from August 3, 1981, to April 6, 1990. Carr alleged that on January 25, 1990, he (for the third time) injured his shoulder while operating a truck without

power steering.[1] He notified Transgas of the injury. On April 4, 1990, Carr was again assigned a truck without power steering, although, he alleges, trucks with power steering were available. He attempted to operate the vehicle but later returned it to the terminal, claiming that he was unable to operate a truck that lacked power steering because of his shoulder injury. Two days later, Carr was discharged for refusing to drive the truck assigned to him on April 4.

Through his union, Carr filed a grievance against Transgas, claiming unjust discharge because he was handicapped under G. L. c. 152, § 75B.[2] In accordance with the collective bargaining agreement between the union and the company, the dispute went to arbitration. The arbitrator concluded that "there was just cause to discharge him in April 1990." The arbitrator also found that the evidence did not support Carr's claim that he suffered a work-related injury which would qualify as a handicap under the law. She ruled, in addition, that, even if such a handicap were established, it was not clear that the law regarding handicap discrimination could be applied here. Unsatisfied with the arbitrator's decision, Carr filed an action in Superior Court alleging handicap discrimination pursuant to G. L. c. 151B, § 4(16).

Transgas moved to dismiss the complaint as precluded by the earlier arbitration. In allowing the motion the judge ruled that "the questions of whether Carr had sustained a work-related injury and whether Transgas fired him because of that injury (or 'handicap') were distinctly in issue and were directly determined by the arbitrator." This was error. See and compare *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. 34, 36-38 (1987).

---

[1] Carr claimed that he had sustained two prior shoulder injuries in a similar manner.

[2] "Any employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of [c. 151B]." G. L. c. 152, § 75B(1), as inserted by St. 1985, c. 572, § 58.

Although in other circumstances an arbitration decision may be preclusive, an employee's prior submission of a claim of racial discrimination to final arbitration under the nondiscrimination clause of a collective bargaining agreement does not foreclose the employee's statutory right under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1988), to a trial de novo in Federal court. *Alexander* v. *Gardner-Denver Co.* (*Alexander*), 415 U.S. 36, 59-60 (1974). "[I]n general, submission of a [racial discrimination] claim to one forum does not preclude a later submission to another." *Id.* at 47-48. In *Alexander* the Court emphasized that an employee's contractual rights under a collective bargaining agreement are distinct from the employee's independent statutory rights under Title VII. "The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence." *Id.* at 49-50. See the discussion in *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991), of the distinctions between the line of cases holding that compulsory arbitration of statutory claims under an agreement to arbitrate all claims may be appropriate and preclusive and the *Alexander* line of cases, which hold that prior submission of a contract-based claim to arbitration does not bar subsequent de novo review of a statutory claim by a court.[3] The *Alexander* Court also determined that, because such rights are personal, or individual, in nature, "an employee's rights under Title VII are not susceptible of prospective waiver." *Id.* at 51-52.

Applying *Alexander* to an employment discrimination case brought pursuant to G. L. c. 151B, the Supreme Judicial

---

[3]Also, compare *Cancellier* v. *Federated Dept. Stores*, 672 F.2d 1312, 1318 (9th Cir.), cert. denied, 459 U.S. 859 (1982) (Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 [1988] does not preempt State claim for breach of implied covenant of good faith and fair dealing), with *Dependahl* v. *Falstaff Brewing Corp.*, 653 F.2d 1208, 1214-1216 (8th Cir.), cert. denied, 454 U.S. 968 (1981) (Employee Retirement Income Security Act, 29 U.S.C. §§1001 et seq. [1988] [ERISA], held to preempt State law claims for tortious interference with employee benefit plans).

Court in *School Comm. of Brockton* v. *Massachusetts Commn. Against Discrimination*, 377 Mass. 392, 399 (1979), stated: "General Laws c. 151B, § 4, concerns not collective processes, but rather each individual's right to equal employment opportunities. . . . Rights of this kind, which are of a personal, and not merely economic, nature are beyond a labor union's ability to bargain away."[4] See also *Rooney* v. *Yarmouth*, 410 Mass. 485, 490-491 (1991), and cases cited.

In the present case, the labor arbitrator lacked the authority to decide Carr's statutory handicap discrimination claim. The issue before the arbitrator was whether, under the terms of the collective bargaining agreement, Transgas had "just cause" to terminate Carr. Nowhere in the agreement was there a provision proscribing handicap discrimination, and there was no other agreement to arbitrate the statutory claim of handicap discrimination. See *Rooney* v. *Yarmouth*, 410 Mass. at 491 ("employees need not submit to arbitration disputes based on independent statutory rights that are not addressed and encompassed by the collective bargaining agreement"). Compare *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (a party can be compelled to arbitrate statutory age discrimination claims covered by an arbitration agreement). Since the arbitrator was confined to interpreting the collective bargaining agreement and the agreement in no way incorporated the statutory claim of handicap discrimination, the arbitrator could not properly have determined that Carr was not handicapped under the provisions of G. L. c. 152, § 75B.[5] See *Gilmer, supra* at 34-35.

---

[4] In the *Brockton* case, the school committee argued that its policy of denying sick leave benefits for pregnancy-related disability was shielded by the collective bargaining agreement and other statutory provisions regarding maternity leaves.

[5] Deciding as we do, we have no occasion to treat the defendant's argument, even if not raised for the first time on appeal, that the arbitrator determined that Transgas had just cause to dismiss Carr on the basis that, prior to his earlier reinstatement, he had agreed that any future refusal to operate assigned equipment would constitute just cause for his dismissal.

In fact, the arbitrator acknowledged her lack of authority to determine whether Carr suffered from a qualifying handicap under G. L. c. 152, § 75B. Noting that the collective bargaining agreement specifically included discrimination based on "race, color, creed, sex, national origin or union membership," but did not mention "handicap," the arbitrator wrote in her opinion, "[B]y its specific omission, it appears that the parties intended to *exclude* the application of external law as it relates to handicap discrimination from the terms of the collective bargaining agreement. Since the arbitrator is limited by the stipulated issue to interpreting the contract, and the contract appears specifically to exclude the law as it relates to handicap discrimination, the Union's argument concerning G. L. c. 152, § 75B, would fail, even if the Grievant had established a work-related injury." (Emphasis supplied.)

Because there was no agreement to arbitrate handicap discrimination claims in the collective bargaining agreement between Carr's union and Transgas, the arbitrator lacked the authority to decide whether Transgas discriminated against Carr on the basis of a handicap. Therefore, the arbitrator's finding that Carr "was not unable to perform his duties by reason of a handicap or impairment" when he refused to drive equipment assigned to him does not preclude Carr's handicap discrimination action brought in Superior Court pursuant to G. L. c. 151B, § 4(16). We accordingly reverse the judgment dismissing the plaintiff's complaint. See *School Comm. of Brockton* v. *Massachusetts Commn. Against Discrimination*, 377 Mass. at 399, and cases cited therein.

*Judgment reversed.*