Fremont-Smith, Thayer, J.
This case involves the termination of a teacher, defendant Charles E. Cough *473 lin, Jr. (“Coughlin”) from the Arlington Public Schools (“APS”) under M.G.L.c. 71, §42, which among other things, allows school districts to dismiss teachers with professional status for conduct unbecoming a teacher or other just cause. The APS dismissed Coughlin, its lead technology teacher responsible for teaching, among other things, computer ethics, after discovering that he had written a series of sexual and romantic e-mails to his supervisor, Principal Stavroula Bouris, on the APS’s public e-mail system and that he had altered and/or forged a public record, an e-mail of APS’s Superintendent of Schools previously sent to Bouris.
In his Award, the arbitrator concluded that Coughlin’s dismissal was inconsistent with G.L.c. 71, §42, and ordered that he be reinstated with full back pay, benefits and interest. However, the arbitrator did not make any findings or draw any conclusions regarding Coughlin’s conduct. Rather, the arbitrator excluded any consideration of the propriety of Coughlin’s conduct because of APS’s violation of an APS policy which provided that anonymous complaints were to be disregarded. According to the arbitrator, because the APS was first notified of Coughlin’s misconduct by way of an anonymous complaint,[1] it was precluded from using any of Coughlin’s improper e-mails obtained from the APS’s public e-mail system as grounds for his discharge. The arbitrator made this ruling despite the fact that such e-mails are public records, APS employees have no right to privacy in such e-mails and APS has reserved the right to monitor such employee e-mails.
The charges against Coughlin included the following:
Other Just Cause: The manipulation of my[2] e-mail message to give the appearance that I had made the decision to deny Ms. Bouris her vacation as set forth in paragraph 3 is also a violation of Arlington’s internet use policies. The policies specifically prohibit “forgery,” “pretending to be someone else when sending/receiving messages” and “attempting to read delete, copy or modify the electronic mail of other users.” The Acceptable Use Policy for Staff indicates that users should not expect privacy in the contents of their personal files on the district system. Policy IJNDC clearly states, “A user who violates district policy or administrative procedures will be subject to suspension or termination of system/network privileges and will be subject to appropriate disciplinary action and/or prosecution."
Conduct Unbecoming a Teacher. You authored a series of e-mails to Ms. Bouris, your principal and, as such, your supervisor, on the Arlington Public Schools e-mail system during the period from October 31, 2006 through June 12, 2007 which portrayed an inappropriately intimate relationship, at times making reference to matters of a sexual nature. These e-mails are wholly inconsistent with your role as a teacher on Ms. Bouris’ staff and with the professional standards for teachers in the Arlington Public Schools. ‘In the area of personal conduct, the Committee expects that teachers and others will conduct themselves in a manner that not only reflects credit to the school system but also sets forth a model worthy of emulation by students.’[3]
Although the arbitrator’s sixty-two page decision contained a lengthy discussion and lengthy findings as to the propriety of APS’s purportedly improper investigation[4] of Coughlin’s conduct, the arbitrator’s decision is completely devoid of any discussion or findings as to whether Coughlin’s own conduct provided grounds for APS to dismiss him under the criteria of c. 71, §42.
The gravamen of the arbitrator’s decision is found at pp. 40-41, where he states:
Irrespective of Ms. Buck’s unauthorized and improper investigation based upon the anonymous note, which inquiry was not stopped by Mr. Levenson when he learned of the anonymous note, Arlington requests that I determine whether or not certain of Mr. Coughlin’s e-mails to Ms. Bouris violated its AUP and Staff Conduct Policy to determine whether or not he engaged in conduct unbecoming a teacher or substantiating other just cause for his dismissal. If I were to accept Arlington’s argument, I would be enforcing and applying some of its policies and procedures, but not all. I would be upholding the AUP, the Administrative Procedures for its Implementation, and the Staff Conduct Policy, but ignoring its Public Complaints policies. I have no arbitral authority to selectively enforce only some of Arlington’s policies. Such selective enforcement would lead to the impermissible deletion of valid, duly promulgated Public Complaint policies of the Arlington School Committee.
This Court disagrees that the arbitrator had “no arbitral authority to selectively enforce only some of Arlington’s policies.” Indeed, he ended up selectively enforcing only one of Arlington’s policies, the one as to anonymous complaints, to the exclusion of its Staff Conduct Policy, which provides:
In the area of personal conduct, the Committee expects that teachers and others will conduct themselves in a manner that not only reflects credit to the school system but also sets forth a model worthy of emulation by students.
By premising his decision not on any examination of Coughlin’s alleged conduct, but rather only on APS’s own procedural misconduct, the arbitrator exceeded the scope of the agreed-upon issue submitted to him, which is stated in the “stipulated issue for arbitration,” as “whether Charles E. Coughlin, Jr.’s dismissal was consistent with Chapter 71 Section 42?”
*474 M.G.L.c. 71, §42, provides:
A teacher with professional teacher status, pursuant to section one, shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy teacher performance standards developed pursuant to section thirty-eight of this chapter or other just cause. (Emphasis added.)
C.71 §42 does mandate that certain procedural rules be adhered to. Thus, it requires:
A teacher who has been teaching in a school system for at least ninety calendar days shall not be dismissed unless he has been furnished with written notice of intent to dismiss and with an explanation of the grounds for the dismissal in sufficient detail to permit the teacher to respond and documents relating to the grounds for dismissal, and, if he so requests has been given a reasonable opportunity within ten school days after receiving such written notice to review the decision with the principal or superintendent, as the case may be, and to present information pertaining to the basis for the decision and to the teacher’s status. The teacher receiving such notice may be represented by an attorney or other representative at such a meeting with the principal or superintendent.
But the arbitrator specifically found that the procedural requirements of c. 71, §42 were adhered to by APS.
Thus, the limit of the arbitrator’s authority under c. 71, §42 was to determine whether Coughlin had engaged in “conduct unbecoming a teacher” or had given APS “other just cause” to terminate him. Indeed, the scope of his authority is mandated also by c. 71, §42’s requirement that, in determining whether the superintendent has proven grounds for dismissal under the section, “the arbitrator shall consider the best interest of the pupils in the district and the need for elevation of performance standards.” Instead, the arbitrator made no findings in regard to the uncontested facts regarding the only issue properly submitted to him for arbitration, namely whether Coughlin’s conduct justified his dismissal on the grounds stated in G.L.c. 71, §42, but devoted his entire sixty-two page decision to whether APS had initiated its investigation in violation of its procedural rule as to anonymous complaints.[5]
In School District of Beverly v. Geller, 435 Mass. 223 (2001), the SJC held that an arbitrator had exceeded the scope of his authority under G.L.c. 71, §42 when he reinstated a teacher who had been discharged for misconduct, and reversed the decision of the Superior Court which had affirmed the arbitrator’s decision. The Court said at 228-30:
The power and authority of an arbitrator is ordinarily derived entirely from a collective bargaining contract, and he violates his obligation to the parties if he substitutes “his own brand of industrial justice” for what has been agreed to by the parties in that contract. Georgia-Pacific Corp. v. Local 27, United Paperworkers Int’l Union, 864 F.2d 940, 944 (1st Cir. 1988), quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). An arbitrator “cannot transcend the limits of the contract of which the agreement to arbitrate is but a part.” Plymouth-Carver Regional Sch. Dist. v. J. Farmer & Co., supra, quoting Lawrence v. Falzarano, 380 Mass. 18, 28 (1980). Stated differently, an arbitrator’s “award is legitimate only so long as it draws its essence from the collective bargaining agreement” that he is confined to interpret and apply. United Steelworkers v. Enterprise Wheel & Car Corp. supra at 597. School Comm of Waltham v. Waltham Educators Ass'n, supra at 706-07. In performing his responsibilities, the arbitrator exceeds his authority if he ignores the plain language of the contract. Misco, supra at 38.
The Court went on to distinguish the more narrow scope of an arbitrator’s authority when interpreting a statute, as opposed to a collective bargaining agreement, as follows:
In this case the source of authority to arbitrate the dismissal of a teacher is a statute, not a collective bargaining contract. This important difference informs this court’s determination of how the arbitrator’s powers are to be ascertained and interpreted.
In the collective bargaining context, the arbitrator is ordinarily empowered to interpret the underlying contract and the extent of his powers thereunder. Such authority comes from the parties having agreed to it in the contract itself and is consistent with the notion that arbitrators have special expertise in the interpretation of collective bargaining agreements. See School Comm. of Danvers v. Tyman, 372 Mass. 106, 115 (1977) (interpreting collective bargaining agreement ordinarily task for arbitrator and not court); School Comm. of Hanover v. Curry, 369 Mass. 685, 685 (1976) (arbitrator’s interpretation of the agreement, since the subject is committed to the arbitrator by the agreement). See also Misco, supra at 37-38 (it is the arbitrator’s view of the facts and of the meaning of the contract that [the parties] have agreed to accept). But as the United States Supreme Court noted long ago, the “specialized competence of arbitrators pertains primarily to the law of the shop, not the law of the land.” Alexander v. Gardner Denver Co., 415 U.S. 36, 57 (1974), citing United Steelworkers v. Warrior & Guf Navigation Co., 363 U.S. 574, 581-83 (1960). “Where the determinations to be made are primarily issues of public law, the arbitrator possesses no special expertise . . .” School Comm. of Hanover v. Curry, 3 Mass.App.Ct. 151, 156 (1975), 369 Mass. *475 683 (1976) (no justification for allowing arbitrator to determine school committee’s statutory rights). See Massachusetts Bay Transp. Auth. v. Local 589, Amalgamated Transit Union, 406 Mass. 36, 40 (1989), citing Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 392 Mass. 407, 411 (1984) (“court, upon review, need not defer to arbitrator’s interpretation of relevant statutes”). Hence, the responsibility for interpreting the meaning of G.L.c. 71, §42, and the scope of the arbitrator’s authority thereunder remains with the court. It cannot be ceded to the arbitrator by agreement of the parties, and has not been ceded to the arbitrator in the statute.
M.G.L.c. 150C, §11(3) provides that the Superior Court “shall vacate an award if the arbitrators exceeded their powers ...” For the reasons stated above, the Court concludes that the arbitrator did exceed his powers here and that the award must be vacated. See Geller, supra, and see also: Carr v. Transgas, Inc., 35 Mass.App.Ct. 581 (1993), at 584-85; Sun Fire Protection & Engineering, Inc. v. D.F. Pray, Inc., 73 Mass.App.Ct. 906, 907 (2009) (an arbitration award will not be overturned even if he makes an error of law or fact “as long as he does not ‘overstep the limits of the issues submitted to him.’ ")

ORDER

Accordingly, defendant’s motion for judgment on the pleadings is DENIED. Plaintiffs cross motion for judgment on the pleadings is ALLOWED, and final judgment shall be entered vacating the arbitration award and ordering a rehearing before a new arbitrator, as provided in M.G.L.c. 150, §11 (5)(c).

The investigations had been triggered by an anonymous written complaint, whereas an APS policy provided that “anonymous notes will be disregarded.”

Superintendent Nate Levensen.

Language in single quotes in second paragraph is from the APS Staff Conduct Policy.

While the investigation had been triggered by an anonymous note of complaint, which violated an APS policy, it constituted no invasion of Coughlin’s privacy, as the e-mails were all contained on the public APS website as to which he could have had no expectation of privacy.

This rule was voluntarily adopted by APS. It was not required either by statute or by any collective bargaining agreement.