384 So.2d 941 (1980)
CITY OF ORLANDO, Appellant,
v.
INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 1365, Appellee.
No. 78-1295/NT4-86.
District Court of Appeal of Florida, Fifth District.
June 18, 1980.
*942 Norman F. Burke of van den Berg, Gay & Burke, P.A., Orlando, for appellant.
Michael M. Switzer, Asst. Gen. Counsel, and Susan E. Koch, Staff Atty., for William E. Powers, Jr., Gen. Counsel, Tallahassee, for the Public Emp. Relations Commission.
HERSEY, GEORGE W., III, Associate Judge.
This is an appeal from an order of the Public Employees Relations Commission (PERC), which order finds appellant, The *943 City of Orlando, in violation of Section 447.501(1)(a), Florida Statutes (1975); that it so say, guilty of an unfair labor practice. The particular section invoked by the Commission states:
447.501
(1) Public employers or their agents or representatives are prohibited from
(a) Interfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part.
This provision and other pertinent sections were substantially unchanged in Florida Statutes, 1977, and for the purpose of clarity references will be to the 1977 section numbers.
As a consequence of having been found in violation, the City was required to post a notice for a period of time stating, in effect, that the City would refrain from similar unfair labor practices in the future.
During the latter part of 1976 and continuing in early 1977, the Employer Relations official (for the City) and representatives of Local # 1365, The International Association of Firefighters (the union for the public employees involved) were engaged in negotiating an employment agreement. The areas that became troublesome involved wages, overtime and special compensation related to education. Unable to successfully negotiate these items, the parties submitted the matter to a special master as provided for by Subsection 447.403(2), Florida Statutes. The special master's report, received by the parties on January 6, 1977, was the subject of a meeting of the negotiators for the parties on January 14, 1977, at which time the City rejected the special master's recommendations.
On January 31, 1977, the City Council conducted a public hearing pursuant to Subsection 447.403(4)(d). No final action resulted from that meeting and negotiations continued, apparently with the consent of both parties, until February 21, 1977. On that date, at a meeting of the City Council, a representative of the union demanded that the City take immediate unilateral action to resolve the disputed impasse items with finality. Thereafter, the City Council passed the following motion:
Moved by Commissioner Keith, seconded by Commissioner Kennedy that City Council ratify the proposal of its Employee Relations Official of February 15th to-wit: it would be a 3.5% salary increase for Grades 43 and over upon execution of the contract and 5% for all those grades effective October 1, 1977; time-and-a-half would become effective after 192 hours and a 28-day cycle and EMT II's would receive $50 per month in addition to their regular salary. If this is not acceptable to the Fire Fighters within 10 days City Council hereby postpones any further decisions on the matter until the 77/78 budget is considered.
On February 28, 1977, the union voted to accept the terms offered by the City and thereafter a collective bargaining agreement was signed by representatives of both parties.
Pursuant to an unfair labor practice charge filed by the appellee union, counsel for PERC issued a complaint alleging that the City of Orlando had engaged in an unfair labor practice within the meaning of Sections 447.501(1)(a) and (c) by failing to take action as required by Section 447.403(4)(d) to resolve certain impasse items and by conditioning its resolution of such impasse items on the union's total acceptance of the City's bargaining proposal. The complaint alleged, in essence, that on January 31, 1977, the City conducted a public hearing pursuant to Section 447.403(4)(d); that at such hearing, and thereafter, the City failed to resolve the remaining impasse items; that on or about February 15, 1977, an agent of the City offered a bargaining proposal on the impasse items which proposal was rejected by the union; and that on February 21, 1977, following the union's demand that the City take immediate unilateral action to resolve the disputed impasse, the City, following the recommendation of its agent, conditioned its resolution of the impasse items on the union's total acceptance of the City's February 15th bargaining proposal.
*944 The hearing officer issued his recommended order in which he concluded that following its rejection of the special master's recommended decision, the City was under a duty, pursuant to Section 447.403(4)(c) and (d), to forthwith conduct a legislative hearing and take legislative action to resolve the impasse issues with finality. Nevertheless, the hearing officer concluded that the union had waived performance by the City of its statutory duty to resolve the impasse issues by voluntarily participating in and requesting bargaining after January 31, 1977, and by subsequently accepting the City's offer and ratifying and signing a contract. Because of that, the hearing officer concluded that the City's failure to take the required legislative action on January 31, 1977, was not an unfair labor practice. PERC issued its decision and order which adopted the hearing officer's findings of fact. While concurring with the hearing officer's conclusion that the City was under a duty pursuant to Section 447.403(4)(c) and (d) to conduct a hearing and take legislative action to resolve the impasse issues, the Commission differed with the hearing officer on the waiver issue, instead concluding that, although the union waived prompt performance of the City's statutory duty by participating in and requesting bargaining between January 31, 1977 and February 21, 1977, the waiver ended on February 21, 1977, when the union demanded that the City take legislative action to resolve the impasse issues with finality. The Commission concluded that the City's failure to thereafter respond in the proper fashion interfered with, restrained, and coerced public employees in the exercise of rights guaranteed them by Part II of Chapter 447, Florida Statutes, and constituted an unfair labor practice in violation of Section 447.501(1)(a). The subsequent acceptance by the union of the City's offer and the signing of a contract was held not to have waived the City's failure to take legislative action as demanded. In addition to ordering the City to cease and desist from such conduct in the future, the City was ordered to post a notice in all fire stations which admitted the violation.
The City's appeal is based upon four grounds.
The City maintains that Section 447.403(4)(d), Florida Statutes, authorized but did not require the City Council to legislate the terms and conditions of the firefighters' employment. While this is an accurate analysis of the statute, it does not answer the real question involved.
Section 447.403 of the Public Relations Employment Act contemplates the use of three distinct impasse resolution techniques. Should negotiations result in an impasse, a mediator may be called in to assist. In the absence of resolution in that manner, special master proceedings may be instituted. If the special master's recommendations for settlement of the contract talks are rejected by either party, the matter is referred to the legislative body for final disposition. The public body must, and the bargaining agent may, submit its recommendations for impasse resolution to the legislative body, and the legislative body thereafter takes "such action as it deems to be in the public interest, including the interest of the public employees involved." United Faculty of Florida, FEA/United, AFT, AFL-CIO, Local 1880 v. Board of Regents, 365 So.2d 1073 (Fla. 1st DCA 1979). The issue for consideration is whether a legislative body may, where it deems such action to be in the public interest, authorize further negotiations. The City contends that Section 447.403(4)(d), Florida Statutes, allows it the option of continuing to bargain, following a Section 403(4)(c) legislative hearing when that legislative body, acting in its impartial legislative capacity, deems such action to be in the public interest. The City also contends that a unilaterally imposed settlement by legislative fiat hardly advances the purposes of the act as stated in Section 447.201.
Section 447.403(3) provides that after the recommended decision of the special master is transmitted to the parties, that decision should be discussed further by the parties in negotiations. It is not uncommon for negotiation to take place during the formal fact-finding *945 proceedings of the special master, and in fact negotiations may resume after the factfinder's report has been issued. McHugh, The Florida Experience in Public Employee Collective Bargaining, 1974-1978: Bellwether for the South, 6 FSU L.Rev. 263, 317 (1978). But the act provides that once the recommendation of the special master is rejected by either the public employer or the employee organization, the dispute must be submitted to the legislative body, which, after conducting a hearing, has the final authority for resolving the impasse. This proceeding is a recognition of the fact that public employees are otherwise constitutionally prohibited from striking. Article I, Section 6, Florida Constitution.
To understand what the statute contemplates in requiring that the legislative body take "such action as it deems to be in the public interest, including the interest of the public employees involved" in resolving the impasse, it is necessary to recognize that frequently, the negotiator and the legislative body are one and the same body wearing two hats. In this case, the Orlando City Commission is the public employer responsible for negotiating, in an adversary setting, a collective bargaining contract with the City's firefighters. Yet once a contract impasse occurs, the City Commission must put on its legislative hat because it is also the legislative body. Section 447.203(1), Florida Statutes. It must depart from its adversary role and suddenly become neutral, an awkward position because the City Commission must adjudicate disputes as a legislative body to which it is a party in interest as a public employer. This situation becomes very difficult in cases of acrimonious contract disputes where the sides have polarized and waged political war through the news media. Indeed, the act manifests a determination that the legislative body act in good faith and impartiality and consider equally the positions of the parties in order to arrive at a final solution. In this regard, the legislature has made a choice to forestall the probability of long, drawn-out unsuccessful negotiations following the rejection of the special master's report by requiring the legislative body to take action to resolve the dispute. It seems unlikely that the dispute will be promptly resolved by the legislative body again switching hats and seeking to achieve agreement through further negotiations. The concern with such a distortion of the statutory scheme is borne out by the result in this case, in which the City Commission, after deciding, purportedly in the public interest (including the interest of the public employees involved), to revert to its adversary position and encourage further negotiations, ultimately adopted a resolution on February 21, 1977, which reflected a "take it or leave it" approach with regard to salary demands, which the union was ultimately forced to accept.
The statute prohibits "coercion." While there was no clear showing that a delay in finalization of an employment agreement "until the 77/78 budget is considered" would be detrimental to the interests of the individuals represented by the union, it seems obvious that some element of "coercion" was involved or the language to that effect included in the motion adopted by the City Council would have no purpose. It is this type of overreaching that the statute seeks to prohibit. The public entity, once it purports to be acting in its legislative or quasi-judicial capacity, may not, with impunity, wield the power implicit in that capacity as a cudgel to coerce the union into accepting terms of employment offered by the same public entity in its capacity as employer.
The thrust of Order No. 78U-176 issued by the Public Employees Relations Commission is that mere delay by the City Council in legislating a resolution of the impasse items after demand by the union negotiators on February 27, 1977 that the matters in controversy be resolved in that manner constituted an unfair labor practice. Under some circumstances, it is obvious that delay might be construed as a refusal by the public entity to bargain collectively and in good faith but this would seem to be a violation of Section 447.501(1)(c) rather than Section 447.501(1)(a), Florida Statutes. The Commission held that a violation of the *946 last mentioned section resulted from the action (or inaction) of the City Council. In this particular, the order is deficient; however, the result is not changed in that a violation of either section constitutes an "unfair labor practice."
As a second position on appeal the City contends that the union waived its right to insist upon compliance with the statutory requirements by continuing to negotiate after February 21, 1977. It should be noted, initially, that neither party had the right to waive requirements of the statute designed to protect the public interest (as distinguished from the private interests of the union). 56 Am.Jur., Waiver § 4; 12 Fla.Jur. Estoppel and Waiver § 5. More to the point, however, it is nowhere contended nor could it be successfully contended that appellee waived appellant's commission of an unfair labor practice.
Appellant's third point on appeal raises the question of whether incorporation by reference of portions of a hearing officer's report in a Commission order is sufficient explication to satisfy the requirements of Florida Statutes § 120.57 (Administrative Procedure Act). While the public policy implicit in the requirement of explication is satisfied by incorporation of the rationale by reference, the better practice would be to spell out the rationale in the order so that it may be more readily accessible for analysis and possible constructive criticism.
Finally, appellant contends that the portion of the Commission's order which requires the City to cease bad-faith bargaining is unsupported by a finding of substantial evidence, and hence exceeds the Commission's remedial powers. The City was found to be in violation of Section 447.501(1)(a), Florida Statutes. Pursuant to Section 447.503(6)(a), the Commission issued a cease and desist order and required the City to post a notice which read in part:
WE WILL NOT condition our resolution of impasse issues upon the acceptance by the certified bargaining agent of the terms of our resolution.
This remedy was tailored to the precise factual circumstances under which the City failed to take final legislative action and does not constitute a promise by the City to bargain in good faith. The fact that the remedy may have been redundant, in light of the remaining portions of the notice, or that it could have been construed as prohibiting the City from engaging in what amounted to bad faith bargaining is but incidental. The Commission noted that requiring the City to take legislative action in this instance would be counterproductive since a complete collective bargaining agreement had been reached. Accordingly, the City was simply ordered not to circumvent its statutory duty in the future by conditioning the resolution of impasse issues upon acceptance by the bargaining agent of the union of terms offered by the City in its capacity as employer.
Accordingly, the order appealed from is affirmed.
JOHN R. BERANEK, Associate Judge, concurs.
JOHN H. MOORE, II, Associate Judge, dissents with opinion.
MOORE, JOHN H., II, Associate Judge, dissenting:
I respectfully dissent. Even assuming the appellant is guilty of an unfair labor practice by having violated Section 447.501(1)(a), Florida Statutes (1977), a conclusion I do not believe is supported by the record, I would hold that appellee has waived its right to complain by agreeing to a contract and accepting its benefits. The proper procedure would have been to reject the City's proposal and then lodge a complaint with the appropriate authority.