OPINION OF THE COURT
 

 Wachtler, J.
 

 The Industrial Commissioner of the Department of Labor of the State of New York (Commissioner) issued a notice of labor law violation, asserting that petitioner was in violation of subdivision 3 of section 162 of the Labor Law, for failing to provide a 20-minute meal -break between 5:00 and 7:00 p.m. to employees who commenced work before noon and continued working past 7:00 p.m.
 
 *247
 
 Petitioner sought review of the Commissioner’s order, challenging its validity on several grounds. The Industrial Board of Appeals, after a hearing, issued a decision affirming the order insofar as it concerned those employees of petitioner who were regularly scheduled to work beyond the prescribed hours.
 
 [1]
 
 In this article 78 proceeding to have the Commissioner’s order set aside, both Special Term and the Appellate Division majority concluded that petitioner was not in violation of the Labor Law, because the statutory benefit had been waived by the employees through the collective bargaining process. We perceive no overriding public policy that prevents waiver or modification of the precise statutory terms so long as the legislative purpose is not undermined. Where, as here, substitute provisions for rest or meal periods have been arrived at through good-faith negotiation to meet the exigencies of the affected industry, the statutory benefit should be deemed effectively modified by the employees. The order of the Appellate Division should therefore be affirmed.
 

 Petitioner is a well-known New York producer of live and taped television programming for local, national, and worldwide broadcast. Its primary programming activities are daytime dramatic shows and news and sports broadcasts. The nature of this programming makes it impractical and unrealistic to afford employees who are members of the technical crews specific rest periods during certain time periods. The live evening network news shows involve an intense preparation period in the hour prior to broadcast (between 5:00 and 6:00 p.m.) and are actually on the air from 6:00 until 7:30 p.m. During these critical hours, technical crew members cannot be excused for a 20-minute meal period. Similarly, those employees who work outside the studio gathering news cannot be relieved on a predetermined time schedule, given the spontaneity of news development and the need to conform to strict time deadlines.
 

 Recognizing the need for flexibility in the provision of rest periods and the difficulty of anticipating the necessity
 
 *248
 
 for overtime work, petitioner and its employees, through their exclusive bargaining agent,
 
 [2]
 
 sought to accommodate the unique requirements of this telecommunications industry by specific negotiation on this aspect of working conditions. The resulting agreement provides that employees working on a shift exceeding 10 hours are entitled to a second meal period of 30 minutes, to be afforded not earlier than the fourth hour after the end of the first meal and not later than the twelfth hour of work. Although the scheduling of these meal breaks is within petitioner’s discretion, employees who are deprived of the second break by the exigencies of television operations are contractually entitled to receive monetary compensation. Other rest periods are afforded employees, during which they are permitted to consume food. In the video tape department, two 15-minute breaks are provided in the first eight hours of work, with an additional 15-minute break for every two hours of overtime. Outside the video tape operation, engineers are given breaks of five minutes per hour based upon petitioner’s obligation to provide employees with “reasonable breaks”.
 

 Subdivision 3 of section 162 of the Labor Law mandates that a second meal period “of at least twenty minutes between five and seven o’clock in the evening” be provided to “[e]very person employed for a period or shift starting before noon and continuing later than seven o’clock”. The agreement reached by petitioner and its employees concerning rest periods is clearly not in strict compliance with the statutory requirement, inasmuch as each employee working the given hours is not guaranteed a second break between 5:00 and 7:00 p.m. It is contended on behalf of petitioner, however, that the specific statutory benefit has been waived by its employees by virtue of the collective bargaining agreement.
 

 The purpose of the statute is clearly to confer a benefit upon individual workers. The Legislature has determined that persons who work the designated hours must, for their own health and welfare, be given adequate opportunity to
 
 *249
 
 eat and rest. There is a public interest implicated in the statute as well, for the exhausted worker is a danger to his co-workers and the public as well as himself. But the fact that a public interest is present does not erect an inviolable shield to waiver of the statutory provisions. Where there is no express indication of the legislative intent, waiver or modification of such a statutory benefit will be permissible to the extent that it can be ascertained that the legislative purpose is not contravened
 
 (Estro Chem. Co. v Falk,
 
 303 NY 83, 86-87; see
 
 Brooklyn Bank v O’Neil,
 
 324 US 697, 704).
 

 In the specific area of the State’s regulation of the employer/employee relationship and minimum working conditions, this court has been cautious in permitting a waiver of a benefit statutorily conferred upon workers. Nevertheless, the rule stated above with respect to waivers generally has been followed, with some qualifications arising from the importance of deferring to the legislative scheme in this area. In
 
 Matter of Abramovich v Board of Educ.
 
 (46 NY2d 450, cert den 444 US 845), we held that a tenured teacher may waive the right to the procedural due process provisions of section 3020-a of the Education Law in settlement of disciplinary proceedings. Specifically noting the critical role of the statutory provisions in safeguarding tenured teachers from official arbitrariness, we recognized that in addition to protecting the individual teacher the statute effectuated a public interest — fostering an independent and professional corps of teachers
 
 (id.,
 
 at p 455). The strong public policy of the statute was not undermined, however, where the waiver of statutory benefits was freely, knowingly and openly arrived at, without taint of coercion or duress
 
 (id.,
 
 at p 455). In reaching this conclusion, we laid stress upon the facts that the statute itself contained no express provision precluding waiver of its benefits and that the teacher received significant benefits in return for the waiver, in the form of discontinuance of the disciplinary matter.
 

 Abramovich
 
 was followed by other cases permitting waiver under specified circumstances. The focus in these cases, in which there was no express legislative indication that waiver was precluded, is upon the existence of a bona
 
 *250
 
 fide agreement by which the employee received a desired benefit in return for the waiver, the complete absence of duress, coercion or bad faith and the open and knowing nature of the waiver’s execution
 
 (Matter of Feinerman v Board of Coop. Educational Servs.,
 
 48 NY2d 491 [waiver by prospective teacher of expectation of tenure and right to appointment to a three-year probationary term];
 
 Matter of Juul v Board of Educ.,
 
 76 AD2d 837, affd on opn below 55 NY2d 648 [waiver of right to tenure upon expiration of statutory probationary period]). Moreover, we have recognized that waivers which are otherwise permissible may be effected by the employees’ exclusive bargaining agent through the collective bargaining process
 
 (Matter of Board of Educ. v Nyquist,
 
 48 NY2d 97).
 

 Applying the principles drawn from those cases to the matter before us, it is clear that the employees executed a valid waiver of the statute’s specific second meal break requirement. Notwithstanding the Legislature’s ability to foreclose waiver of the provisions of the Labor Law (Labor Law, §§ 650, 662, subd 2; § 663, subds 1, 2 [minimum wage]; § 595, subd 1 [unemployment insurance benefits]), the statute contains no express prohibition against waiver. Further, there is no doubt that the waiver was arrived at as a result of good faith negotiations with respect to a term of employment. Indeed, the exigencies of this industry are such that it was to the advantage of both petitioner and its employees to negotiate an alternative arrangement better suited to their needs. As in
 
 Feinerman (supra),
 
 there is not even a hint of duress or coercion in the negotiations which resulted in this agreement. Neither is there any suggestion in this record that the waiver was elicited in less than an open and knowing manner.
 

 Finally, the legislative purpose to assure that workers receive adequate rest and meal periods is in no way compromised by the agreement between petitioner and its employees. The substitute provisions for a second meal period, as well as the granting of additional, generous rest periods during which the consumption of food is permitted, fully comports with the important public policy underlying the statute.
 

 
 *251
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Meyer and Kaye concur; Judges Jones and Simons taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . The board determined that those employees who continued work beyond 7:00 p.m. as a result of an unscheduled extension of working hours were not included in the statutory meal break provision.
 

 [2]
 

 . The editors, engineers and couriers who are the subjects of the Commissioner’s order are represented by the National Association of Broadcast Employees & Technicians, AFL-CIO.