Public Employee Labor Relations Board
No. 83-374

## APPEAL OF WHITE MOUNTAINS REGIONAL SCHOOL BOARD
### (New Hampshire Public Employee Labor Relations Board)

December 31, 1984

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Jack B. Middleton* and *Steven V. Camerino* on the brief, and *Mr. Camerino* orally), for the White Mountains Education Association, NHEA/NEA.

*Nighswander, Martin, Kidder & Mitchell P.A.*, of Laconia (*Bradley F. Kidder* on the brief and orally), for the White Mountains Regional School Board.

SOUTER, J.   The plaintiff White Mountains Education Association filed a complaint with the public employee labor relations board under RSA 273-A:6 (Supp. 1983), charging that the defendant White Mountains Regional School Board had committed unfair labor practices prohibited by RSA 273-A:5, I(a), (e), (h) and (i). Following procedural steps not relevant here, the public employee labor relations board found that the defendant had violated RSA 273-A:5, I(e), and the defendant appealed. We affirm.

The plaintiff association successively entered into two agreements with the White Mountains Regional School District, following collective bargaining in each instance. (Though not the named defendant, the district is the real party defendant in this case and will be so treated in this opinion.) Each agreement recognized the association as the exclusive bargaining agent for "cooks and related workers" employed by the district. The first agreement covered the period January 1, 1980, through June 30, 1981, and was automatically renewable. The second agreement covered the period July 1, 1981, through June 30, 1984. Each agreement provided for specific hourly rates of pay for the covered employees. Neither agreement contained terms setting the number or schedule of hours to be worked, beyond a provision that "[a]ll employees covered by this Agreement shall be employed up to eight hours daily including one-half hour paid lunch and one ten-minute coffee break."

In May 1981, the district entered into a series of contracts with individual cooks represented by the association. These contracts provided for certain terms of employment during the school year beginning in September 1981 and ending in June 1982. Each con-

tract set the number of hours to be worked each day by the employee and paid for by the district. The numbers varied among the contracts, from five to seven and one-half hours.

Though none of the contracts referred to sources of funds to pay the employees, officials of the district assumed that there would be funding at a certain level from the national government under the Child Nutrition Act of 1966, 42 U.S.C.A. §§ 1771–1789 (West 1978 & Supp. 1984). Late in the spring of 1981, however, the district learned that such funding would fall below expectations. From June through October officials of the district met with employee members of the bargaining unit and with the school board to determine how to reduce expenditures to stay within reduced income. The district eliminated some positions, which are not in issue here, and late in October 1981 it notified four cooks that the number of hours to be worked each day would be reduced from the levels provided in their individual contracts.

In February 1982, the association filed the present complaint of unfair labor practices with the board. The board concluded that the action by the district in reducing hours was tantamount to a refusal "to negotiate in good faith with the exclusive representative of . . . [the] bargaining unit" about a term of employment, within the meaning of RSA 273-A:5, I(e) and 3, I. Consequently the board ordered a restoration of work to the respective contractual levels, with back pay for the hours of employment wrongfully refused. One member of the board dissented on the ground that determination of hours to be worked fell within managerial policy, free from the obligation to bargain. See RSA 273-A:1, XI. He therefore saw the district's action solely as a violation of individual employment contracts.

The board's decision is best approached by noting first what the board did not decide. The board did not decide that it had jurisdiction to adjudicate disputes under the individual employment contracts. It did not find that those contracts had somehow become incorporated into the collective bargaining agreement, and it did not find that the district had violated the collective bargaining agreement in any way.

What the board did decide was that the provisions of the individual contracts setting hours to be worked were provisions of terms of employment within the meaning of RSA 273-A:1, XI. The board then applied RSA 273-A:3, I, which provides that terms of employment are subjects of mandated collective bargaining.

More specifically, the board applied the statute by following *Appeal of Watson*, 122 N.H. 664, 448 A.2d 417 (1982). There we held that even when a term of employment has been set by some practice

or agreement quite independent of a collective bargaining agreement, an employer may not change that term unilaterally, without bargaining about the change.

Hence in this case the board found that once the schedules of hours had been set by the individual contracts, they could not be changed unilaterally, without bargaining. The board held that when the district reduced hours without bargaining about the reduction, it had refused to negotiate, or bargain collectively, which is an unfair or prohibited practice under RSA 273-A:5, I(e).

In its appeal the district does not directly challenge the board's statutory analysis, and it is sufficient for us to note that we see no reason to doubt the soundness of the board's reading of the provisions involved. The district does dispute the board's findings that it had illegally refused to bargain collectively on the subject of hours. First, it claims that any one of five provisions of the collective bargaining agreement must be read as giving it the right to reduce hours as it did. It urges us to reverse the board for failing to give effect to these contractual provisions. Second, the district argues that it did bargain collectively about the specific reductions at issue here, and again it urges us to reverse the board for failing to recognize that it fulfilled any possible duty to bargain before making the changes.

We turn first to the several provisions of the later collective bargaining agreement upon which the district relies for authority to act as it did. The district first invokes the contractual term we have already noted, that individual employees would work up to eight hours a day. The district claims that this provision implies that the district had discretion to set hours any way it wished within the eight-hour limit. The board obviously read this language differently, and we are unable to find error in the board's interpretation.

Giving ordinary meaning to the language of the agreement, *Appeal of Berlin Board of Education*, 120 N.H. 226, 413 A.2d 312 (1980), the "up to eight hours" term is ambiguous. The term is consistent with the view that the district is free to do whatever it chooses in setting hours within the limit of eight. But the term is also consistent with the more limited view that the association and the district merely intended the hours to be set, as they were, in separate employment contracts. On this latter interpretation there would be no implicit agreement that the district could unilaterally change the hours once they had been set by separate contracts. This latter view is the one presupposed by the board's decision.

Since the board did not explicitly set out its findings and rulings in support of its interpretation of this ambiguous term, it would be within our discretion to remand the case to the board for an explicit

treatment of this issue. *See N.H. Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.*, 117 N.H. 976, 380 A.2d 1085 (1977); *cf.* RSA 541-A:20 (Supp. 1983). We have chosen not to remand on this issue, however, for there are two apparent alternative bases for the board's interpretation, each of which is sustainable.

On the one hand the board may simply have found that the association's interpretation of the ambiguity was warranted on the evidence before it. If so, we have no basis on the present record to find the board's reading of the agreement clearly unreasonable or unlawful under RSA 541:13.

■ On the other hand, the board may have applied a rule of construction that ambiguous contractual terms are insufficient to waive statutory rights. *See Timken Roller Bearing Company v. N.L.R.B.*, 325 F.2d 746 (6th Cir. 1963), *cert. denied*, 376 U.S. 971 (1964). If so, we have no basis to find in this construction a gross abuse of discretion, on which alone we may reverse a ruling of the board when exercising its discretion to define the terms of RSA chapter 273-A or to fill the interstices of the statute. *State Employees' Ass'n v. Cheney*, 119 N.H. 822, 409 A.2d 775 (1979).

■ On either possible rationale then, there is no basis to reverse the board on its interpretation or application of the language of the agreement considered so far. However, we caution the board that RSA 541-A:20 (Supp. 1983), enacted after the board decided this case, will require an explicit statement of reasons in comparable circumstances in the future.

The second term of the collective bargaining agreement on which the district relies for relief from any obligation to bargain further about hours is the provision that "[t]he Board . . . retains the unrestrictive [sic] right . . . to unilaterally act on any and all matters not excluded by RSA 273-A or the specific language of this Agreement." We take this to mean that the district, acting through the school board, may act on a subject without bargaining with the association unless either the statute or the specific terms of the collective bargaining agreement itself forbid such unilateral action.

■ This term is of no avail to the district, however, for the statute does forbid unilateral action to change hours of work. Under the statute, the obligation to bargain covers the terms and conditions of employment. RSA 273-A:3, I. The terms and conditions of employment are defined to include "wages, hours and other conditions of employment other than managerial policy . . . ." RSA 273-A:1, XI. The board's determination that the term "hours" includes the subject of the number of hours to be worked was consistent with federal

cases. *see Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676 (1965), and with the plain meaning of the language of the statute, *see In re Russell C.*, 120 N.H. 260, 414 A.2d 934 (1980).

■ The third term of the agreement invoked by the district provides that "the School Board reserves the right to adopt and implement any rule or regulation concerning employee practices or working conditions without prior discussion with the Association, provided it does not conflict [sic] or violate any of the terms of this agreement." This language has no apparent application here, however, because there is no evidence that the school board adopted any "rule or regulation." In this case the school board simply determined that hours ought to be reduced and told the district's business manager to reduce them.

The district's fourth asserted source of discretion under the agreement is the provision that it retained the right "to relieve employees from duties because of lack of work or for other legitimate reasons." The district claims that the reduction in federal money was a "legitimate" reason to break individual contracts setting terms of employment.

■ There is no basis in the record to suggest that the board abused its discretion in rejecting this argument. *See* RSA 541:13. The fact is that the district did not have to bind itself unconditionally to employ the cooks for a certain number of hours, but it did. Having done so the district could still have limited its contractual liability by reference to receipt of federal funds, but it did not. Since it did not, the district had contractual obligations that it could have attempted to honor by seeking to raise income from taxation to pay for the shortfall in federal funds. The board committed no error, therefore, where it impliedly found that an increased but not impossible burden under the individual contracts was not a "legitimate" reason to take unilateral action to break those contracts.

■ Nor do we find error in the board's rejection of the district's claim under a fifth term, that it was acting under its reserved right to "take any actions . . . necessary or desirable to carry out the mission of the . . . District in emergencies." "Emergencies" is not defined. If emergencies are assumed to be financial, the foregoing discussion of the district's power to raise money by taxation answers the district's position. If emergencies are assumed to be circumstances requiring rapid action, the board may well have found that some four months to consider what to do about the reduction in funds was time enough to bargain collectively.

We conclude that the district has failed to demonstrate reversible

error in the board's refusal to find that the terms of the collective bargaining agreement freed the district from its statutory obligation to bargain about changes in hours. With this we turn to the district's last argument.

■ The district claims that the board erred in finding that it had refused to bargain about the specific reductions, citing its consultation with employee members of the association. There is no question that the board's representative did consult with the employees about the problems created by the diminished flow of funds. The statute, however, obligated the district to bargain with the exclusive representative of the bargaining unit. RSA 273-A:3, I. However we may characterize the consultation with the affected employees, it does not appear from the record that those employees were a bargaining committee of the association as the exclusive bargaining representative. Therefore the board was warranted in concluding that communication with the affected employees was not bargaining with the exclusive bargaining representatives of the unit.

Since the record discloses no error, the board's decision must be affirmed.

*Affirmed.*

All concurred.