[645 NYS2d 933]

In the Matter of CONSOLIDATED RAIL CORPORATION, Appellant,
v JOHN F. HUDACS, as Commissioner of Labor of the State
of New York, et al., Respondents.

Third Department, July 25, 1996

*McNamee, Lochner, Titus & Williams, P. C.,* Albany *(Scott A. Barbour* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Claire T. O'Keefe, Daniel F. DeVita, Peter Crary* and *M. Patricia Smith* of counsel), for respondents.

### OPINION OF THE COURT

CREW III, J.

Petitioner is a corporation engaged in interstate commerce and operates a railroad system encompassing numerous railroad yards in the State where trains are received and dispatched under the supervision of a yardmaster. The yardmasters, through their representative, the United Transportation Union (hereinafter UTU), filed a complaint with respondent Commissioner of Labor alleging that petitioner failed to provide them with a meal period as required by Labor Law § 162. As a consequence, the Department of Labor issued a notice of violation to petitioner for failing to provide prescribed meal periods to the yardmasters. Petitioner applied for review with respondent Industrial Board of Appeals (hereinafter the IBA) and, following a hearing, the IBA affirmed the notice of violation. Petitioner then commenced this CPLR article 78 proceeding seeking a judgment annulling the IBA's decision. Supreme Court dismissed the petition and this appeal ensued.

The facts giving rise to this litigation, by and large, are undisputed. Petitioner's operation encompasses, at its various yards, receiving inbound freight trains, separating and redirecting cars from such trains, and assembling and dispatching outbound trains, and the yardmasters are responsible for coordinating these activities. The yardmasters traditionally work eight-hour shifts, and they remain at their posts during the entire eight-hour period in order to maintain supervision of the yard and to be available in case of an emergency. Consequently, the yardmasters have no set meal period, but they are allowed to eat at their work stations throughout their

shifts and are provided with refrigerators and microwave ovens to facilitate the storage and preparation of food.

The yardmasters are the subject of a collective bargaining agreement (hereinafter CBA) between petitioner and the UTU which provides, in relevant part, that "[e]ight (8) consecutive hours service, exclusive of the time required to make transfers, shall constitute a day, except where requirements of the service necessitate, an unpaid meal period or intermittent service will be established by agreement between the Senior Director-Labor Relations and the General Chairman [of the UTU]". In 1988, the UTU sought to renegotiate the issue of meal periods, as petitioner and UTU representatives had been unable to come to an agreement in the interim. No agreement was reached and, as a consequence, a Presidential Emergency Board was created to resolve, among other things, the meal period issue. This particular issue remained unresolved and, ultimately, a representative of the UTU asked the Department to investigate petitioner's alleged failure to comply with Labor Law § 162, resulting in the instant proceeding.

At the heart of this controversy is whether Federal law preempts enforcement of Labor Law § 162. The Railway Labor Act (45 USC § 151 *et seq.* [hereinafter RLA]) was enacted to promote stability in labor-management relations in the industry and established a mandatory arbitral mechanism to resolve, *inter alia*, disputes arising "out of the interpretation or application of [collective bargaining] agreements concerning rates of pay, rules, or working conditions" (45 USC § 153 [First] [i]). Such " 'minor disputes' " involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation" (*Trainmen v Chicago Riv. & Ind. R. R. Co.*, 353 US 30, 33) and must be resolved through the arbitration process, thus preempting State law (*see, Consolidated Rail Corp. v Railway Labor Executives*, 491 US 299, 303-305).

Petitioner claims that this case involves the interpretation of the CBA relative to the yardmasters' meal periods and, as such, qualifies as a minor dispute subject to arbitration under the RLA. In support of its contention, we are urged to be cognizant of the parties' long-time practice, usage and custom with regard to the yardmasters' meal periods. We think this begs the question, however. Indeed, the lack of meal periods was long standing, but the issue also was a long-standing dispute between the parties, as evidenced by the CBA, which provided that the issue would be resolved at some future date

by agreement between the parties' designated representatives. As the CBA does not, on its face, provide for such meal periods, there is no minor dispute requiring interpretation of the CBA and, hence, the provisions of the RLA are not triggered.

Moreover, even accepting petitioner's assertion that due to the course of conduct between and past practices of the parties, the CBA implicitly addressed the meal period issue, we nonetheless would conclude that the RLA does not preempt Labor Law § 162. It has long been the law that the arbitral mechanism of the RLA does not preempt State laws that are independent of collective bargaining agreements. Specifically, in *Terminal Assn. v Trainmen* (318 US 1, 6-7), the United States Supreme Court, in upholding State action regulating working conditions, observed: "State laws have long regulated a great variety of conditions in transportation and industry, such as sanitary facilities and conditions, safety devices and protections, purity of water supply, fire protection, and innumerable others. Any of these matters might, we suppose, be the subject of a demand by workmen for better protection and upon refusal might be the subject of a labor dispute which would have such effect on interstate commerce that federal agencies might be invoked to deal with some phase of it. But we would hardly be expected to hold that the price of the federal effort to protect the peace and continuity of commerce has been to strike down state sanitary codes, health regulations, factory inspections, and safety provisions for industry and transportation. We suppose employees might consider that state or municipal requirements of fire escapes, fire doors, and fire protection were inadequate and make them the subject of a dispute, at least some phases of which would be of federal concern. But it cannot be said that the minimum requirements laid down by state authority are all set aside. We hold that the enactment by Congress of the Railway Labor Act was not a pre-emption of the field of regulating working conditions themselves and did not preclude the State * * * from making the order in question".

In short, the RLA never was intended to "broadly pre-empt[ ] substantive protections extended by the States, independent of any negotiated labor agreement" (*Hawaiian Airlines v Norris*, 512 US 246, 256). Preemption occurs only where enforcement of a State law depends upon the interpretation of the relevant collective bargaining agreement (*see, Pennsylvania Fedn. of Bhd. of Maintenance of Ways Empls. v National R. R. Passenger Corp.*, 989 F2d 112, 115, *cert denied* 510 US 824). Where,

as here, enforcement of a State law involves purely factual questions regarding an employer's conduct without resort to the collective bargaining agreement at issue, there is no preemption (*cf.*, *Lingle v Norge Div.*, 486 US 399).

Nor are we persuaded, again accepting petitioner's construction of the CBA, that the yardmasters waived the protections afforded by Labor Law § 162. It is clear that the provisions of Labor Law § 162 may be waived to the extent that the legislative purpose is not contravened (*see*, *Matter of American Broadcasting Cos. v Roberts*, 61 NY2d 244, 249). In *Matter of American Broadcasting Cos. v Roberts* (*supra*), the Court of Appeals approved of a collective bargaining agreement that sought to accommodate the unique requirements of the telecommunications industry by modifying the strict mandates of Labor Law § 162 (3) and, in so doing, observed that "[t]he substitute provisions for a second meal period, as well as the granting of additional, generous rest periods during which the consumption of food is permitted, fully comports with the important public policy underlying the statute" (*supra*, at 250).

Here, the legislative purpose of Labor Law § 162—ensuring that workers are given adequate opportunity to eat and rest for the protection of their own health and welfare as well as that of their co-workers and the public at large (*see*, *Matter of American Broadcasting Cos. v Roberts*, *supra*, at 248-249)—is compromised by the CBA for, unlike the agreement at issue in *Roberts*, it simply provides for no such periods at all. Accordingly, any waiver effected here would be impermissible. Moreover, even assuming that the purported waiver did not offend the legislative purpose of the statute, there is nothing in the record demonstrating that the yardmasters received a desired benefit in return, which is an absolute prerequisite to the waiver doctrine (*supra*, at 249-250). Petitioner's remaining contentions, including its assertion that the IBA's determination is not supported by substantial evidence, have been examined and found to be lacking in merit.

CARDONA, P. J., MIKOLL, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.