DAVID HOGELIN AND INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS LOCAL NO. 1575, APPELLEES, v.
CITY OF COLUMBUS, NEBRASKA, A POLITICAL
SUBDIVISION, AND DEAN HEFTI, IN HIS OFFICIAL
CAPACITY AS CHIEF OF THE CITY OF COLUMBUS
FIRE DEPARTMENT, APPELLANTS.

741 N.W.2d 617

Filed November 16, 2007. No. S-06-641.

454

Mark A. Fahleson and David J.A. Bargen, of Rembolt Ludtke, L.L.P., for appellants.

John E. Corrigan, of Dowd, Howard & Corrigan, L.L.C., for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

This case involves a dispute between the City of Columbus (the City) and its firefighters about whether training sessions mandated by the City would have resulted in a violation of state law regulating the hours firefighters can be required to work.[1] The district court concluded that the scheduled sessions were unlawful and enjoined the City from requiring them. The issues presented in this appeal are whether the scheduled training sessions would have violated the law and whether the firefighters were entitled to injunctive relief.

## BACKGROUND

At the time of trial, the City maintained a force of 12 full-time career firefighters and 72 volunteers. A shift for paid firefighters was 24 hours, and the fire department had three shifts that rotated on a 3-day cycle to provide full-time, 24-hour coverage. The City's description of the job of "Firefighter/Emergency Medical Technician" stated, in relevant part, that the job "require[d] knowledge and skill acquired only through specialized training" and that firefighters would be required to "successfully complete all required in-service training requirements."

Dean Hefti, the Columbus fire chief, explained that for their safety, emergency management responders need to be trained in awareness and operations with respect to hazardous materials. In addition, the City had received a homeland security

---

[1] See Neb. Rev. Stat. § 35-302 (Reissue 2004).

grant for a hazardous materials response team. Hefti testified that the grant money was at risk unless the City assembled such a team. To that end, Hefti arranged mandatory hazardous materials training sessions. But Hefti said that while the grant "was there," the reason he made the training mandatory was "the safety of the firefighters and the responding personnel to industrial accidents, car accidents, et cetera," as well as public safety. Firefighters had attended off-shift training sessions before, but had done so at their own individual request, subject to Hefti's approval.

The training sessions at issue in this case were scheduled and conducted by the State Fire Marshal Training Division, and held at the Columbus Fire Department. Hefti explained that the State Fire Marshal was used because it met "NFPA code" and was available at no cost. The training sessions were scheduled for 7 p.m. on Thursday evenings: May 5, 12, and 26, 2005; June 23 and 30; and July 7, 14, 21, and 28. Hefti said that the State Fire Marshal did not agree to alternative schedules he had suggested.

Letters to Hefti from the State Fire Marshal Training Division explained that "[t]here must be at least 14 students in attendance at the course or it may be subject to cancellation. Please make sure your members attend these courses, since proper training is vital to every emergency response organization." The letters also encouraged Hefti to invite others, such as law enforcement and emergency services personnel, and included a form letter for that purpose.

Hefti sent a memorandum to all career personnel explaining the mandatory training schedule. David Hogelin, president of the firefighters' union, the International Association of Firefighters Local No. 1575 (the Union), objected on the firefighters' behalf. Hogelin's letter to Hefti explained that "[n]ine weeks of every Thursday night is a strain on the families of the fighters, who already spend every third day at the station." Hogelin suggested that the training could be accomplished more quickly and on duty time.

Hogelin's letter specifically cited state law as barring the mandatory training sessions. Section 35-302 provides that

firefighters employed by cities having paid fire departments "shall not be required to remain on duty for periods of time which will aggregate in each month more than an average of sixty hours per week." Hogelin explained that including the additional training hours, Columbus firefighters would be required to work an average of 61.76 hours a week.

In response to Hogelin's letter, Hefti and the Columbus city administrator provided Hogelin with a memorandum concluding that the required sessions were legal under the collective bargaining agreement (CBA) between the Union and the City and that the sessions would remain mandatory. Section 35-302 provides that a firefighter's single-duty shift shall be 24 consecutive hours, followed by an off-duty period as necessary to comply with the statute, "unless by voluntary agreement between the city and the firefighter, any firefighter may be permitted to work an additional period of consecutive time," and may return to work after less than 24 hours off duty. The City's position was that the CBA was such a "voluntary agreement," because it provided in relevant part that

> [a]ll management rights, functions, responsibilities, and authority not specifically limited by the express terms of this Agreement [or] State Statute . . . are retained by the [City] and remain exclusively within the rights of the [City]. These rights, powers, and authority include, but are not limited to . . . the scheduling of operations and the time to be worked . . . .

The CBA also provided that the normal work schedule would be "24 hours on, followed by 48 hours off, with the workday starting at 8 a.m." but that "[s]hould it be necessary in the judgment of the [City] to establish different work schedules or starting time, notice of such changes shall be given to the Union as far in advance as is reasonably possible." Hogelin averred, however, that as Union president, he had never discussed waiving any rights of Union members under § 35-302.

On May 10, 2005, Hogelin and the Union (hereinafter collectively the Union) filed a complaint in the district court against Hefti and the City (hereinafter collectively the City), seeking declaratory and injunctive relief, and a motion for a temporary

injunction. An evidentiary hearing on the motion was held on May 27 on the underlying legal issues and the firefighters' damages.

Hogelin averred that pursuant to a court-ordered visitation schedule, he was entitled to visitation with his son on every Thursday evening he was not scheduled to work and that the mandatory training would have the effect of depriving him of visitation. Ryan Loewnstein averred that he received a written reprimand after he failed to attend a May 5, 2005, training session, even though Hefti had already approved his request for leave to attend a wedding in North Carolina. Several other firefighters had been reprimanded for failing to attend the training sessions. Hefti also conceded that although fewer than 14 students attended the May 12 session, it had not been canceled.

The district court concluded that the mandatory training schedule would invade the firefighters' off-duty hours, protected by § 35-302. The court further concluded that the collective bargaining agreement did not override § 35-302. The court found that the firefighters would suffer irreparable harm, as Hefti had already reprimanded firefighters who had failed to attend training in their off-duty hours, and that "the threat of additional disciplinary measures for future nonattendance is real and genuine, not imaginary." The court entered a temporary injunction ordering Hefti and the City not to impose the mandatory hazardous materials training. On substantially the same evidence, on May 10, 2006, the court entered a permanent injunction to the same effect.

## ASSIGNMENTS OF ERROR

The City assigns that the court erred in granting relief to the Union because (1) the requirement that firefighters attend hazardous materials training does not violate § 35-302, (2) training is not "harm" entitling the Union to injunctive relief, and (3) even if the training is "harm," it is compensable by money damages.

## STANDARD OF REVIEW

■ An action for injunction sounds in equity. In an appeal of an equity action, an appellate court tries the factual questions

de novo on the record and reaches a conclusion independent of the findings of the trial court.[2]

▪ The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.[3]

## ANALYSIS

### VIOLATION OF § 35-302

We note, initially, that the City's brief does not take issue with the court's conclusion that the hazardous materials training requirement, if implemented, would place the firefighters' working hours in violation of the 60-hour-per-week limitation imposed by § 35-302. Instead, the City's argument that the requirement would not violate § 35-302 is premised entirely on the CBA, so our analysis of the City's first assignment of error is also limited to the effect of the CBA. Section 35-302 provides in full:

> Firefighters employed in the fire departments of cities having paid fire departments shall not be required to remain on duty for periods of time which will aggregate in each month more than an average of sixty hours per week. Each single-duty shift shall consist of twenty-four consecutive hours and shall be followed by an off-duty period as necessary to assure compliance with the requirements of this section unless by voluntary agreement between the city and the firefighter, any firefighter may be permitted to work an additional period of consecutive time and may return to work after less than a twenty-four-hour off-duty period. Any firefighter may be assigned to work less than a twenty-four-hour shift, but in such event the firefighter shall not work in excess of forty hours per week. No firefighter shall be required to perform any work or service

---

[2] *Pony Lake Sch. Dist. v. State Committee for Reorg.*, 271 Neb. 173, 710 N.W.2d 609 (2006), *cert. denied* 547 U.S. 1130, 126 S. Ct. 2058, 164 L. Ed. 2d 784.

[3] *Pennfield Oil Co. v. Winstrom*, 272 Neb. 219, 720 N.W.2d 886 (2006).

as such firefighter during any period in which he or she is off duty except in cases of extraordinary conflagration or emergencies or job-related court appearances.

The City claims that the provisions of the CBA set forth above effected a "voluntary agreement," within the meaning of § 35-302, to alter the firefighters' work schedules by conferring scheduling authority on the City.

We note that there is substantial authority for the proposition that some statutory rights, particularly those intended to serve an important public policy or guarantee the personal rights of individual workers, cannot be waived through collective bargaining.[4] For instance, an individual's statutory protection against discrimination cannot generally be waived by his or her collective bargaining agent.[5] "While a union undeniably has the power to waive statutory rights related to collective activity . . . certain other statutory rights stand on a different footing. . . . Rights of this kind, which are of a personal, and not merely economic, nature are beyond a labor union's ability to bargain away."[6] But for purposes of our analysis in this case, we assume, without deciding, that the rights protected by § 35-302 could be waived through collective bargaining. We need not answer that question, because we conclude that the CBA at issue in this case did not effect such a waiver.

■ It is well settled that a waiver in a collective bargaining agreement must be established by clear and express contractual

---

[4] See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). See, e.g., *Cooper v. Smithfield Terminal Ry. Co.*, 635 A.2d 952 (Me. 1993); *School Comm. of Brockton v. Massachusetts Commission Against Discrimination*, 377 Mass. 392, 386 N.E.2d 1240 (1979); *Wright v. City of Santa Clara*, 213 Cal. App. 3d 1503, 262 Cal. Rptr. 395 (1989); *City of Orlando v. Intern. Ass'n of F. F., etc.*, 384 So. 2d 941 (Fla. App. 1980). Cf. *Matter of ABC v Roberts*, 61 N.Y.2d 244, 461 N.E.2d 856, 473 N.Y.S.2d 370 (1984) (waiver of statutory rights permissible where legislative purpose not contravened).

[5] See *Alexander, supra* note 4.

[6] *School Comm. of Brockton, supra* note 4, 377 Mass. at 399, 386 N.E.2d at 1244.

language.[7] As the U.S. Supreme Court has stated, "we will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable."[8]

 An employer bears the burden of establishing that a clear and unmistakable waiver has occurred.[9] A clear and unmistakable waiver may be found in the express language of a collective bargaining agreement, or it may even be implied from the structure of an agreement and the parties' course of conduct.[10] But a waiver of statutory rights in a CBA must be knowingly made and must specifically address the subject upon which the waiver is claimed.[11] The contract must demonstrate that the intent of the parties was to preempt statutory rights.[12] No waiver will be implied unless it is clear that the parties were aware of their rights and made the conscious choice, for whatever reason, to waive them.[13]

---

[7] *Central City Educ. Ass'n v. IELRB*, 149 Ill. 2d 496, 599 N.E.2d 892, 174 Ill. Dec. 808 (1992). See *Crete Ed. Assn. v. Saline Cty. Sch.' Dist. No. 76-0002*, 265 Neb. 8, 654 N.W.2d 166 (2002). See, e.g., *Carson v. Giant Food, Inc.*, 175 F.3d 325 (4th Cir. 1999); *N.L.R.B. v. New York Telephone Co.*, 930 F.2d 1009 (2d Cir. 1991); *Timkin Roller .Bearing Company v. N. L. R. B.*, 325 F.2d 746 (6th Cir. 1963); *State ex rel. v. Local School Dist.*, 89 Ohio St. 3d 191, 729 N.E.2d 743 (2000); *Appeal of White Mts. Regional School Bd.*, 125 N.H. 790, 485 A.2d 1042 (1984); *Faust v. Ladysmith-Hawkins School Systems*, 88 Wis. 2d 525, 277 N.W.2d 303 (1979); *Francini v. Phoenix Newspapers, Inc.*, 188 Ariz. 576, 937 P.2d 1382 (Ariz. App. 1996).

[8] *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S. Ct. 1467, 75 L. Ed. 2d 387 (1983). Accord, *Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998); *Hammond v. State, Dept. of Transp.*, 107 P.3d 871 (Alaska 2005); *Pasco Police Ass'n v. City of Pasco*, 132 Wash. 2d 450, 938 P.2d 827 (1997); *Dept. of Cent. Management Services v. Bd.*, 373 Ill. App. 3d 242, 869 N.E.2d 274, 311 Ill. Dec. 600 (2007).

[9] *New York Telephone Co., supra* note 7.

[10] *Id.*

[11] See *Pasco Police Ass'n, supra* note 8.

[12] See, *Local School Dist., supra* note 7; *Dept. of Cent. Management Services, supra* note 8.

[13] *New York Telephone Co., supra* note 7; *Pasco Police Ass'n, supra* note 8.

. The parties' CBA in this case does not demonstrate a clear and unmistakable waiver . of the firefighters' rights under § 35-302. There is no mention in the CBA of the statute or its requirements,[14] and silence in the bargaining agreement on such an issue does not meet the test.[15] The language relied upon by the City refers only in general terms to the City's responsibility for establishing duty schedules, and "[b]road, general language is not sufficient to meet the level of clarity required to effect a waiver in a CBA."[16] In fact, to the extent that statutory limitations on working conditions are mentioned in the CBA, that language supports the· Union's argument, because the CBA reserves to the City all management responsibilities *"not . . . limited by . . . State Statute."* (Emphasis supplied.) And the only evidence in the record relevant to the negotiations between the parties, Hogelin's affidavit, implies that § 35-302 was not the subject of bargaining.

 [8] The City contends that the authority cited above is inapplicable to this case, because § 35-302 permits firefighters to voluntarily agree to work beyond the hours permitted by the statute. The City asserts that because § 35-302 contains an "exception" for voluntary agreements, the CBA is not really a "waiver" of statutory rights that must be clear and unmistakable. But the City's argument is unavailing. The fact that rights under § 35-302 *can* be waived by voluntary agreement does not prove that they *were* waived in the absence of evidence to that effect. And contrary to the City's suggestion, a voluntary agreement as allowed by § 35-302 is a "waiver" of a statutory right. A "waiver" is "a voluntary and intentional relinquishment of a known right."[17] Section 35-302 provides firefighters with statutory rights and permits firefighters to waive those rights by voluntary agreement, but does not alter

---

[14] See, *Bratten v. SSI Services, Inc.*, 185 F.3d 625 (6th Cir. 1999); *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1 (1st Cir. 1999). Compare, e.g., *Frontier Ins. Co. v. Koppell*, 225 A.D.2d 93, 648 N.Y.S.2d 812 (1996).

[15] See *Timkin Roller Bearing Company, supra* note 7.

[16] *Carson, supra* note 7, 175 F.3d at 331.

[17] *Faust, supra* note 7, 88 Wis. 2d at 532-33, 277 N.W.2d at 306. See, also, *Crete Ed. Assn., supra* note 7; *Koppell, supra* note 14.

the well-established principle that such a waiver must be clearly and expressly established.

In short, we will not assume that the Union waived a statutory right unless that waiver is clearly established, and nothing in the CBA or the record in this case establishes a clear and unmistakable waiver of the firefighters' rights under § 35-302. The City's first assignment of error is without merit.

AVAILABILITY OF INJUNCTIVE RELIEF

The City contends that even if the mandatory training schedule was in violation of § 35-302, injunctive relief was inappropriate. We disagree.

■ We acknowledge that an injunction is an extraordinary remedy that ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice.[18] The City argues that the firefighters had an adequate remedy at law.

■ But an adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.[19] And an injury is irreparable when it is of such a character or nature that the party injured cannot be adequately compensated in damages, or when the damages which may result cannot be measured by any certain pecuniary standard.[20] Irreparable injury, as used in the law of injunction, does not necessarily mean that the injury is beyond the possibility of compensation in damages, nor that it must be very great.[21]

■ The City argues that the firefighters were not entitled to injunctive relief because "being required to attend [hazardous materials] training three hours a week for a few weeks in the summer certainly does not rise to the level of an 'irreparable

---

[18] *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006).

[19] *Id.*

[20] See *Rath v. City of Sutton*, 267 Neb. 265, 673 N.W.2d 869 (2004).

[21] *Id.*

harm.'"[22] But that requirement violates state law, and unlawful acts by public officers may, in a proper case, be restrained.[23] When an action is brought to enforce a statute or make effective a declared policy of the Legislature, the standards of public interest and not the requirements of private litigation measure the propriety and need for injunctive relief.[24] Here, the firefighters were being required to work in excess of the hours that the Legislature has determined, as a matter of public policy, to be permissible without specific agreement. That represents an injury that the district court correctly considered in determining the relief to be afforded. We also note the City's implicit concession that the firefighters were entitled to monetary compensation for the time spent in training. Effectively, the City would be unlawfully expending public funds—also an injury subject to injunction.[25]

The City also contends that the mandatory training was not "harm" at all, because the firefighters would benefit from the training, and had requested training in the past. We disagree with the City's suggestion that an unlawful work requirement does not "harm" an individual simply because it is believed to be for the individual's own good. And in any event, the Legislature's decision to enact § 35-302 forecloses that contention.

Next, the City argues that the harm was not irreparable because it involved time at work, which is compensable in money damages. It is not entirely clear, however, what pecuniary standard the City is suggesting should be applied to compensate the firefighters for its unlawful work requirements. It appears that the City is contending that the firefighters would be made whole if they were paid the wages due for the work required of them.

But if the sole relief available to the Union is that the City simply pay the firefighters wages for the time spent training,

[22] Brief for appellants at 24.

[23] See *Kuester v. State*, 191 Neb. 680, 217 N.W.2d 180 (1974).

[24] See *Edwards v. Boston*, 408 Mass. 643, 562 N.E.2d 834 (1990). See, also, *Tulsa Order of Police Lodge v. Tulsa*, 39 P.3d 152 (Okla. Civ. App. 2001); *Weimer v. City of Baton Rouge*, 915 So. 2d 875 (La. App. 2005).

[25] See *Farrell v. School Dist. No. 54*, 164 Neb. 853, 84 N.W.2d 126 (1957).

then § 35-302 would be effectively unenforceable. We have stated that "if an absence of irreparable harm (beyond the illegality of the expenditure itself) prevents a court from deciding if an illegal expenditure of public funds has occurred, following the law becomes irrelevant to those entrusted to uphold it."[26] Similarly, if the City was permitted to require firefighters to work whatever hours it pleased, subject only to the requirement that they be paid, then § 35-302 would cease to be relevant to those charged with obeying it.

 Instead, we have said that a remedy at law is not adequate if the situation requires and the law permits preventative relief as preventing the repetition and continuance of wrongful acts.[27] Whether damages are to be viewed by a court of equity as "irreparable" depends more upon the nature of the right which is injuriously affected than upon the pecuniary measure of the loss suffered.[28] And in certain circumstances, severe personal inconvenience can constitute irreparable injury justifying issuance of injunctive relief.[29] We have little difficulty in concluding on the facts of this case that the City's violation of state law, expressed intent to continue violating state law, and imposition upon firefighters that resulted from that policy, justified the district court's order of injunctive relief.[30]

In arguing to the contrary, the City relies on *Davenport v. International Broth. of Teamsters*,[31] in which the D.C. Circuit concluded that members of a flight attendants' union were not entitled to an injunction against a change in their work schedules that exceeded the limitations imposed by their CBA. But *Davenport* is readily distinguishable. In *Davenport*, the flight attendants' "principal contention" was that the proposed

---

[26] *Rath, supra* note 20, 267 Neb. at 281, 673 N.W.2d at 885.

[27] *Adams v. Adams*, 156 Neb. 778, 58 N.W.2d 172 (1953).

[28] *Burroughs Wellcome & Co. v. Johnson Wholesale Perfume Co.*, 128 Conn. 596, 24 A.2d 841 (1942). See *Armbruster v. Stanton-Pilger Drainage Dist.*, 169 Neb. 594, 100 N.W.2d 781 (1960).

[29] *CWA v. Treffinger*, 291 N.J. Super. 336, 677 A.2d 295 (1996).

[30] See, *Adams, supra* note 27; *Burroughs Wellcome & Co., supra* note 28.

[31] *Davenport v. International Broth. of Teamsters*, 166 F.3d 356 (D.C. Cir. 1999).

schedules "increase[d] the flight time required of flight attendants in a given duty period, while at the same time eliminating attendants' per diem pay and hotel allowances because overnight stays are no longer required on such trips."[32] The D.C. Circuit concluded that their injury could be remedied with money damages, invoking the proposition that "'temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.'"[33] In other words, the issue decided by the D.C. Circuit in *Davenport* was whether the income lost by the flight attendants was an irreparable harm. In the present case, lost income is not at issue.

Finally, the City argues that injunction should have been denied because the benefits to the firefighters and the public from hazardous materials training outweighed any injury to the firefighters resulting from the training requirement. We acknowledge the general proposition that injunction may be withheld when it is likely to inflict greater injury than the grievance complained of.[34] "'If the protection of a legal right even would do a plaintiff but comparatively little good and would produce great public or private hardship, equity will withhold its discreet and beneficent hand and remit the plaintiff to his legal rights and remedies.'"[35]

But the City's public policy argument is forestalled by § 35-302. It is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state.[36] Although the City adduced very little evidence at trial to support its public policy argument, we are not in a position to question the benefits of training firefighters about hazardous materials. But those benefits must be obtained either within the limitations imposed as a matter of public policy by the Legislature or with the voluntary agreement of

---

[32] *Id.* at 367.

[33] *Id.*

[34] *Lambert, supra* note 18. See, also, *Edwards, supra* note 24.

[35] *Lambert, supra* note 18, 271 Neb. at 451, 712 N.W.2d at 276.

[36] *In re Claims Against Atlanta Elev., Inc.*, 268 Neb. 598, 685 N.W.2d 477 (2004).

the firefighters to do otherwise. Section 35-302 contains exceptions for "extraordinary conflagration or emergencies or job-related court appearances." Perhaps job-related training should be added to that list of exceptions. But if so, that decision belongs to the Legislature.

For those reasons, we find the City's remaining assignments of error to be without merit.

## CONCLUSION

We conclude that the parties' collective bargaining agreement did not effect a waiver of the firefighters' rights under § 35-302 and that the district court did not err in enjoining the City's enforcement of its unlawful policy. The judgment of the district court is affirmed.

AFFIRMED.